## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BEDIVERE INSURANCE COMPANY
F/D/B/A ONEBEACON INSURANCE
COMPANY,

                    Plaintiff,

vs.

BLUE CROSS and BLUE SHIELD OF
Kansas, Inc.; AND Allied World Surplus
Lines Insurance Company f/k/a Darwin Select
Insurance Company,

Defendants.

Case No.   2:18-cv-02371

## COMPLAINT FOR DECLARATORY JUDGMENT

## GENERAL ALLEGATIONS

1.      Plaintiff Bedivere Insurance Company f/d/b/a OneBeacon Insurance Company ("OneBeacon") brings this Complaint ("Complaint") for declaratory relief against Defendants Blue Cross and Blue Shield of Kansas, Inc. ("BCBS-KS"), and Allied World Surplus Lines Insurance Company f/k/a Darwin Select Insurance Company ("Allied World") (collectively, "Defendants").

2.      Allied World issued BCBS-KS a primary Managed Care Organization Errors and Omissions Liability Policy (the "Allied World Primary E&O Policy") with a $10 million limit of liability for claims relating to antitrust.  A copy of Allied World's Primary E&O Policy is

attached hereto as **Exhibit 1**.  Allied World also issued BCBS-KS a primary Healthcare

Organizations Directors and Officers ("D&O") Liability Policy (the "Allied World Primary

D&O Policy") with a $15 million limit of liability for claims relating to antitrust.  Allied World's

Primary D&O Policy is attached hereto as **Exhibit 2**.

3.      OneBeacon issued BCBS-KS an Managed Care Errors and Omissions ("E&O")

Excess Indemnity Policy (the "OneBeacon Policy").  OneBeacon's Policy is attached hereto as

**Exhibit 3**.

4.      BCBS-KS has been sued in several class actions across the nation alleging

violations of antitrust laws (the "Underlying Lawsuits").  These lawsuits were later consolidated

for pretrial discovery proceedings in the Northern District of Alabama (collectively with the

component class actions, the "MDL Action").

5.      BCBS-KS tendered both the Allied World Primary E&O Policy and the Allied

World Primary D&O Policy to Allied World for coverage of the Underlying Lawsuits seeking

reimbursement of defense expenses and indemnity.

6.      Allied World accepted BCBS-KS's tender of the Primary E&O Policy and agreed

to reimburse defense expenses incurred by BCBS-KS above the $500,000 retention, subject to

the terms, conditions, limitations and exclusions of the E&O Policy, and subject to Allied

World's reservation of rights.  However, Allied World denied coverage under the Allied World

Primary D&O Policy.

7.      BCBS-KS contends it is entitled to coverage under the Allied World Primary

D&O Policy.

8.      BCBS-KS, however, has done nothing to formally challenge Allied World's

denial under the Allied World Primary D&O Policy.

9.      The Allied World Primary E&O Policy's limit of $10 million is nearing exhaustion.  OneBeacon will soon be forced to decide between (a) dropping down and beginning to advance BCBS-KS its defense expenses under the OneBeacon Policy, despite the Allied World Primary D&O Policy not having been exhausted, and at the risk that OneBeacon may be prejudiced in or precluded from seeking reimbursement of any sums it prematurely reimburses; or (b) refusing to provide BCBS-KS with reimbursement or indemnity until the Allied World Primary D&O Policy is exhausted, which could potentially expose OneBeacon to bad-faith allegations.

10.     OneBeacon therefore seeks a judicial declaration that OneBeacon's Policy is not triggered and there is no coverage under it until BCBS-KS exhausts all primary coverage, including the Allied World Primary E&O Policy and the Allied World Primary D&O Policy.

11.     In addition, OneBeacon has been attempting to investigate coverage for the Underlying Lawsuits since 2012 and for the MDL Action following the MDL Transfer Order in December of 2012.  As the parties to the Underlying Lawsuits/MDL Action explore informal resolution, OneBeacon has been and will continue to be asked to evaluate coverage for any potential settlement or judgment.  Throughout its investigation, OneBeacon has reasonably requested information and documents necessary for OneBeacon to (1) assess BCBS-KS's potential liability in the Underlying Lawsuits consolidated in the MDL Action and (2) make determinations regarding coverage.

12.     Rather than comply with OneBeacon's requests, BCBS-KS has, through its coverage counsel, refused to provide the majority of the requested information and has taken the position that OneBeacon's requests are covered by the mediation privilege.  As to many of the

documents, BCBS-KS's coverage counsel claims disclosure is barred by the attorney-client privilege and/or work product doctrine.

13.     As a result, OneBeacon has been forced to file this action to, among other things, enforce its right to the requested information.  OneBeacon therefore seeks the Court's determination of the scope and meaning of the cooperation clause of the OneBeacon Policy (and the Allied World Primary E&O Policy, to which the OneBeacon Policy follows form) and to enforce OneBeacon's rights under those provisions.  OneBeacon also seeks a judicial determination that BCBS-KS breached the OneBeacon Policy by failing to provide the requested information and documents, and that this breach precludes any coverage.  Alternatively, OneBeacon seeks specific performance under its policy in the form of an order requiring BCBS-KS to provide the requested information and to comply with future reasonable requests.

14.     Per the terms of the OneBeacon Policy(and the Allied World Primary E&O Policy, to which the OneBeacon Policy follows form), in the event OneBeacon issues payment under the excess OneBeacon Policy, OneBeacon is subrogated to the rights of BCBS-KS to recover against any person or entity.  OneBeacon therefore seeks a judicial declaration that if OneBeacon is forced to prematurely pay any sums under the excess OneBeacon Policy, that it has the right to seek recovery from any other entities responsible for BCBS-KS's defense expenses and/or indemnity in the Underlying Lawsuits, including, but not limited to, Allied World and the Blue Cross Blue Shield Association (the "Association" or "BCBSA").

OneBeacon accordingly alleges and seeks relief as follows:

## The Parties

15.     Plaintiff Bedivere Insurance Company f/d/b/a OneBeacon Insurance Company (hereinafter "OneBeacon") is a corporation organized and existing under the laws of the State of

Pennsylvania with its principal place of business in the State of Pennsylvania, and at all relevant times was licensed to do business in the State of Kansas.

16.     Upon information and belief, OneBeacon alleges that defendant BCBS-KS is a corporation organized and existing under the laws of the State of Kansas with its principal place of business in the State of Kansas.

17.     Upon information and belief, OneBeacon alleges that defendant Allied World, is a corporation organized and existing under the laws of the State of Arkansas with its principal place of business in the State of New York.  OneBeacon is also informed and believes that Allied World is licensed to do business in the State of Kansas.

## Jurisdiction and Venue

18.     This is a diversity action for declaratory relief and breach of contract pursuant to 28 U.S.C. § 2201 to declare the rights and other legal relations of the parties regarding insurance policies.

19.     The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a).  There is complete diversity of citizenship between OneBeacon, BCBS-KS, and Allied World.  The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

20.     The Court has personal jurisdiction over OneBeacon, BCBS-KS, and Allied World, and venue is proper in this District under 28 U.S.C. § 1391.

## Nature of the Action

21.     This action is brought pursuant to 28 U.S.C. § 2201, which provides that the Court may declare the rights and other legal relations of the parties.  An actual controversy of a judicial nature exists between OneBeacon, BCBS-KS, and Allied World involving the parties' rights and liabilities under the excess OneBeacon Policy (which follows the form of the Allied World Primary E&O Policy) and the Allied World Primary D&O Policy, both of which

potentially provide liability insurance to BCBS-KS. The construction of those policies and the controversy existing between OneBeacon, BCBS-KS, and Allied World may be determined by a judgment of the Court.

22.     This action also seeks specific performance to remedy BCBS-KS's breach of the Claim Participation and Assistance and Cooperation clauses in the excess OneBeacon Policy and the Allied World Primary E&O Policy.

## BACKGROUND ALLEGATIONS

### The MDL Action

23.     In 2012, several class action lawsuits were filed by providers and subscribers plaintiffs against multiple Blue Cross Blue Shield entities or member plans ("BCBS" or the "Blues") and the Blue Cross Blue Shield Association ("BCBSA" or the "Association"), alleging violations of antitrust laws in the Underlying Lawsuits. The Underlying Lawsuits allege generally that the Blues and the Association conspired to leverage their economic power and market dominance to under-compensate healthcare providers for their services and to increase healthcare costs to subscribers by coordinating their operations and limiting their activities through restrictions in their trademark licenses.

24.     On December 12, 2012, the Judicial Panel on Multidistrict Litigation consolidated and transferred such actions for pretrial proceeding to the United States District Court for the Northern District of Alabama, creating the MDL litigation referred to as In Re: Blue Cross Blue Shield Antitrust Litigation, Master File No 2:13-cv-20000-RDP. A copy of the December 12, 2012 MDL Transfer Order is attached hereto as **Exhibit 4**. In consolidating the providers' and the subscribers' individually filed class actions, the MDL Panel found: "Here, the actions involve substantial common questions of fact relating to the state BCBS entities' relationship with the

national association, BCBSA, and the licensing agreements that limit the Blue Plans' activity to exclusive service areas, among other restrictions."  (Ex. 4 at p. 2.)

25.     Pursuant to an Order issued by the MDL Court, two consolidated complaints were filed in the MDL Action on July 1, 2013, one for the "subscriber track" and the other for the "provider track."  On April 17, 2017, the subscribers filed a Subscriber Track Third Amended Consolidated Class Action Complaint (Document No. 1082 in Master File No 2:13-cv-20000-RDP; hereinafter referred to as the "Subscriber Complaint").  On April 18, 2017, the providers filed a Consolidated Fourth Amended Provider Complaint (Document No. 1083 in Master File No 2:13-cv-20000-RDP; hereinafter referred to as the "Provider Complaint").

26.     BCBS-KS is named as a defendant in both the Provider and Subscriber Complaints.

27.     The Provider Complaint alleges that the Blues have been engaged for many years in an agreement not to compete against one another, but instead to cooperate and coordinate their activities on a nationwide basis in order to maximize their profits.  The Provider Complaint contends that the Blues agreed to cease competing and to impose operational uniformity on themselves decades ago by carving out exclusive service areas, setting up their national programs (including Blue Card), and establishing BCBSA's uniform rules and regulations.  The Blues allegedly formalized their cooperation agreement through the restrictions in their trademark licenses, such as the requirement of mandatory participation in the national programs.

28.     The alleged conspiracy has allegedly perpetuated and strengthened the dominant market position each Blue enjoys in its specifically defined geographic market which, in turn, has enabled the Blues to force healthcare providers to accept anticompetitive rates and terms.

The Provider Complaint alleges that healthcare providers have been subjected to lower rates and less favorable terms than would have been the case in the absence of the conspiracy.

29.     The Provider Complaint seeks injunctive relief prohibiting the Blues, including BCBS-KS, from entering into, honoring, or enforcing any agreements that restrict territories or geographic areas, enjoining the Blues from utilizing the Blue Card Program to pay healthcare providers, and enjoining the Blues from developing any other program or structure that is intended to fix, or has the effect of fixing, prices paid to healthcare providers.  The Provider Complaint also seeks relief in the form of treble damages.

30.     The Subscriber Complaint similarly alleges that the Blues have been engaged for many years in an agreement not to compete against one another, but instead to cooperate and coordinate their activities on a nationwide basis in order to maximize their profits.  The Subscriber Complaint alleges that the Blues agreed to cease competing and to impose operational uniformity on themselves decades ago by carving out exclusive service areas and establishing BCBSA's uniform rules and regulations, including BCBSA's Membership Standards and Guidelines.  The Blues allegedly formalized their cooperation agreement in their trademark licenses.

31.     The Subscriber Complaint seeks injunctive relief prohibiting the Blues, including BCBS-KS, from entering into, honoring, or enforcing any agreements that restrict territories or geographic areas, and it also seeks to eliminate restrictions on the Blues' activities.  The complaint further seeks relief in the form of treble damages of the amount by which the plaintiffs allege premiums were artificially inflated above their competitive levels.

32.     The Provider Complaint and the Subscriber Complaint are based upon the same or related conduct of the Blues relating to the Blues' "relationship with the national association,

BCBSA, and the licensing agreements that limit the Blue Plans' activity . . . ."  (Ex. 4 [MDL

Transfer Order] at p. 2.)  The Provider and Subscriber Complaints differ only with respect to the

alleged harm to the providers and the subscribers.  Both complaints seek relief in excess of the

Court's jurisdictional limit and invoke federal question jurisdiction.

## THE INSURANCE POLICIES

### The Allied World Primary E&O Policy

33.     The Allied World Primary E&O Policy, policy no. 0303-4114, provides certain

coverage to BCBS-KS in excess of the Court's jurisdictional threshold pursuant to the policy's

terms, conditions, and exclusions.  The Allied World Primary E&O Policy has a maximum limit

of liability of $10 million for each claim and in the aggregate for all claims, as well as a $10

million maximum limit of liability for each claim for antitrust activity and in the aggregate for all

claims for antitrust activity pursuant to the policy's terms, conditions, and exclusions.  A copy of

the Allied World Primary E&O Policy is attached hereto as **Exhibit 1**.

34.     The Insuring Agreement in the Allied World Primary E&O Policy provides:

The **Underwriter** will pay on behalf of any **Insured Loss** which the **Insured** is
legally obligated to pay as a result of a **Claim** that is first made against the **Insured**
during the **Policy Period** or during any applicable Extended Reporting Period.

(Ex. 1, § I.)[1]

35.     The term "**Claim**" is defined, in relevant part, as "any written notice received by

any **Insured** that a person or entity intends to hold an **Insured** responsible for a **Wrongful Act**

which took place on or after the retroactive date listed in ITEM 7 of the Declarations."  (Ex. 1,

§ IV, Definition (C).)

---

[1] All policy provisions quoted in this Complaint have been quoted directly from the respective
policies, including all bold and capitalized terms.

36.    The term "**Wrongful Act**" is defined, in relevant part, as "any actual or alleged act, error or omission in the performance of, or any failure to perform, a **Managed Care Activity** by any **Insured Entity** or by any **Insured Person** acting with the scope of his or her duties or capacity as such." (Ex. 1, § IV, Definition (W).)

37.    The term "**Managed Care Activity**," is defined as:

> "**Managed Care Activity**" means any of the following services or activities: **Provider Selection**; **Utilization Review**; advertising, marketing, selling, or enrollment for health care or workers' compensation plans; **Claim Services**; establishing health care provider networks; reviewing the quality of **Medical Services** or providing quality assurance; design and/or implementation of financial incentive plans; wellness or health promotion education; development or implementation of clinical guidelines, practice parameters or protocols; triage for payment of **Medical Services**; and services or activities performed in the administration or management of health care or workers' compensation plans. **Managed Care Activity** shall include all such services and activities listed above, whether provided on paper, in person, electronically, or via any other medium.

(Ex. 1, § IV, Definition (K), as amended by Endorsement No. 10; see also Endorsement 5 and Endorsement 37 [deleting endorsement 5].)

38.    The term "**Loss**" is defined as:

> **Defense Expenses** and any monetary amount which an **Insure**d is legally obligated to pay as a result of a **Claim**.  **Loss** shall not include:

> (1)    fines, penalties, taxes, and punitive, exemplary or multiplied damages; provided that, loss shall include fines, penalties or punitive or exemplary or multiplied damages awarded in **Claims** for **Antitrust Activity** up to the amount listed in ITEM 3 (b) of the Declarations (which amount is part of, and not in addition to the amount listed in ITEM 3 (a) of the Declarations), but only if such fines, penalties or punitive or exemplary or multiplied damages are insurable under applicable law. [sic]

> (2)    fees, amounts, benefits or coverage owed under any contract with any party including providers of health care services, health care plan or trust, insurance or workers' compensation policy or plan or program of self-insurance;

> (3)    non-monetary relief or redress in any form, including without limitation the cost of complying with any injunctive, declaratory or administrative relief; or

> (4)    matters which are uninsurable under applicable law.

Determination of the insurability of any **Loss** shall be made under the laws most favorable to the insurability of **Loss** of either: (a) of the jurisdiction of the **Named Insured's** principal place of business, or (b) the jurisdiction where the **Wrongful Act** giving rise to such **Loss** occurred.

(Ex. 1, § IV, Definition (J).)  Pursuant to Endorsement No. 23, "**Loss**" is amended to also include

"plaintiff's attorneys fees were awarded by the court in a covered **Claim** under this Policy. "

(Ex. 1, Endorsement 23.)

39.     The Allied World Primary E&O Policy provides that, "[e]xcept for **Defense**

**Expenses**, the **Underwriter** shall not pay **Loss** for any **Claim** brought about or contributed to

by:

> (1)     any willful misconduct or dishonest, fraudulent, criminal or malicious act, error or omission by any **Insured**;
>
> (2)     any willful violation by any **Insured** of any law, statute, ordinance, rule or regulation; or
>
> (3)     any **Insured** gaining any profit, remuneration or advantage to which such **Insured** was not legally entitled.
>
> For the purposes of determining the applicability of this EXCLUSION (A); no **Wrongful Act** of any **Insured** shall be imputed to any other Insured. Determination of the applicability of this EXCLUSION (A) may be made by an admission or final adjudication in a proceeding constituting the **Claim**, or in a proceeding separate from or collateral to any proceeding constituting the **Claim**.

(Ex. 1, § II, Exclusion (A), as amended by Endorsement No. 11.)

40.     The Allied World Primary E&O Policy includes the following Assistance and

Cooperation Condition:

> In the event of a **Claim**, the Insureds shall provide the **Underwriter** with all information, assistance and cooperation that the **Underwriter** reasonably requests.

(Ex. 1, § III, Condition (E).)

41.     The Allied World Primary E&O Policy includes the following Subrogation

Condition:

In the event of any payment hereunder, the **Underwriter** shall be subrogated to the extent of any payment to all of the rights of recovery of the **Insureds**. The **Insureds** shall execute all papers and do everything necessary to secure such rights, including the execution of any documents necessary to enable the **Underwriter** effectively to bring suit in their name. The **Insureds** shall do nothing that may prejudice the **Underwriter's** position or potential or actual rights of recovery. The obligations of the **Insureds** under this CONDITION (F) shall survive the cancellation or other termination of this Policy.

(Ex. 1, § III, Condition (F).)

42.      The Allied World Primary E&O Policy includes the following Other Insurance/Other Indemnification Condition:

This Policy shall be excess of and shall not contribute with:

(a)      any other insurance or plan or program of self-insurance (whether collectible or not), unless such other insurance or self-insurance is specifically stated to be in excess of this Policy; and

(b)      any indemnification to which an **Insured** is entitled from any entity other than another **Insured**.

This Policy shall not be subject to the terms or any other policy of insurance or plan or program of self-insurance.

(Ex. 1, § III, Condition (G), as amended by Endorsement No. 19.)

### The Allied World Primary D&O Policy

43.      The Allied World Primary D&O Policy, policy no. 0303-4116, provides certain coverage to BCBS-KS in excess of the Court's jurisdictional threshold pursuant to the policy's terms, conditions, and exclusions. The Allied World Primary D&O Policy has a maximum limit of liability of $15 million for each claim and in the aggregate for all claims, as well as a $15 million maximum limit of liability for each claim for antitrust activity and in the aggregate for all claims for antitrust activity pursuant to the policy's terms, conditions, and exclusions. A copy of the Allied World Primary D&O Policy is attached hereto as **Exhibit 2**.

44.     The Allied World Primary D&O Policy contains the following Insuring

Agreement:

> In consideration of the payment of the premium and in reliance upon the **Application**, which shall be deemed to be attached to, incorporated into, and made a part of this Policy, DARWIN NATIONAL ASSURANCE COMPANY (the "**Insurer**") and the **Named Insured**, on behalf of all Insureds, agree as follows:
>
> *        *        *
>
> **D.     Antitrust Activities Coverage**
>
> The **Insurer** shall pay on behalf of the **Insureds**, subject to the Sublimit of Liability set forth in Item 3.C. of the Declarations, the Loss arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against the **Insureds** for **Antitrust Activities**, and reported to the **Insurer** in accordance with Section VII. of this Policy.

(Ex. 2, Insuring Agreement (D).)

45.     The Allied World Primary D&O Policy defines the term "**Claim**," in relevant

part, as any:

> (1)     written demand for monetary, non-monetary or injunctive relief made against an **Insured**, [or]
>
> (2)     judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an **Insured**, including any appeal therefrom, which is commenced by:
>
> > (a)     service of a complaint or similar pleading;
> >
> > (b)     return of an indictment, information or similar document (in the case of a criminal proceeding); or
> >
> > (c)     receipt or filing of a notice of charges.

(Ex. 2, § II, Definition D.(1) & (2).)

46.     The Allied World Primary D&O Policy defines the term "**Defense Costs**" as:

> (1)      reasonable and necessary fees, costs, charges or expenses incurred by or on behalf of an **Insured** in the investigation, defense or appeal of a **Claim**;
>
> (2)     premium for an appeal, attachment or similar bond, but without any obligation to apply for and obtain such bond, in connection with a **Claim**; or

(3)      any fees, costs, charges or expenses incurred by the **Insured** at the specific written request of the **Insurer** to assist the **Insurer** in the investigation, defense or appeal of a **Claim**.

"**Defense Costs**" do not include: (a) amounts incurred by the **Insured** prior to the date a **Claim** is first made and reported to the **Insurer**; or (b) compensation or benefits of any **Insured Person** or any overhead expenses of the **Company.**

(Ex. 2, § II, Definition (H).)

47.     The Allied World Primary D&O Policy defines the term "**Loss**," in pertinent, as:

(1)      damages, settlements or judgments;

(2)      pre-judgment or post-judgment interest;

(3)      legal costs or attorneys' fees awarded by a court in favor of the claimant;

(4)      punitive or exemplary damages, or the multiple portion of any multiplied damages award, subject to any applicable Sublimit of Liability but only to the extent that such damages are insurable under the applicable law most favorable to the insurability of such damages;

*          *          *

(9)      **Defense Costs**; and

(10)     the costs of complying with any injunctive, declaratory or equitable relief, remedy or order.

"**Loss**" does not include:

(a)      amounts which an **Insured** is not legally obligated to pay;

(b)      taxes; other than as specifically included above in this Definition, and if insurable under law;

(c)      fines or penalties, except as specifically provided for in this Definition or in an Endorsement to this Policy, and only if insurable under law;

(d)      amounts deemed uninsurable under law; or

(e)      costs or liability incurred by any **Insured** to modify any building or property to make it more accessible or accommodating to any disabled person, or in connection with any educational, sensitivity or other corporate program, policy or seminar.

However, this Policy shall provide coverage for **Defense Costs** incurred in a **Claim** seeking amounts specified in paragraphs (a) through (f) above, subject to all other terms, conditions and exclusions of this Policy.

(Ex. 2, § II, Definition (R), as amended by Endorsement No. 6.)

48.     The Allied World Primary D&O Policy has a "Managed Care Exclusion" that states Allied World will not cover any **Loss** in connection with any **Claim** "alleging, arising out of, based upon, or attributable to, any actual or alleged act, error or omission in the performance of, or failure to perform, **Managed Care Activities** by any **Insured** or by any individual or entity for whose acts, errors or omissions an **Insured** is legally responsible, except that this Exclusion shall not apply to that portion of an otherwise covered **Claim** for **Provider Selection Practices**." (Ex. 2, § III, Exclusion (N).)

49.     The Allied World Primary D&O Policy defines the term "**Managed Care Activities**" as any of the following services or activities:

> **Provider Selection Practices; Utilization Review**; advertising, marketing, selling, or enrollment for health care, workers' compensation, life, dental, vision, short–term disability, long-term disability, behavioral health, pharmacy benefit and consumer-directed health plans; **Claim Services**; establishing health care provider networks; reviewing the quality of **Medical Services** or providing quality assurance; design and/or implementation of financial incentive plans; wellness or health promotion education; development or implementation of clinical guidelines, practice parameters or protocols; triage for payment of **Medical Services**; and services or activities performed in the administration or management of health care, workers' compensation, life, dental, vision, short–term disability, long-term disability, behavioral health, pharmacy benefit and consumer-directed health plans.

(Ex. 2, § II, Definition (T).)

50.     The Allied World Primary D&O Policy's Defense and Settlement of a Claim provision states, in pertinent:

F.     **Right to Tender Defense**

(1)     Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of a **Claim** to the **Insurer**.

(2)     The right to tender the defense of a **Claim** to the **Insurer** shall be exercised by the **Named Insured** on behalf of all **Insureds** by providing written notice to the **Insurer**, by certified mail or by email to the address of the **Insurer** set forth in Item 8.A. of the Declarations, specifically requesting the **Insurer** to assume the defense of such **Claim**.  In the event that coverage is provided for a **Claim** exclusively against an **Insured Person**, then such **Insured Person** shall have the right to tender the defense of the **Claim** to the **Insurer** at his or her option.  The **Insured's** right to tender the defense of a **Claim** shall terminate if it is not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**. Further, from the date the **Claim** is first made against an **Insured** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of any **Insured** or the **Insurer** with respect to such **Claim**. In the event the **Insureds** have complied with all of the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent.

(Ex. 2, § VI, Subsection (F).)

### The OneBeacon Policy

51.     The excess OneBeacon Policy, policy number MCX-1778-12, provides certain coverage to BCBS-KS in excess of the Court's jurisdictional threshold pursuant to the policy's terms, conditions, and exclusions.  The OneBeacon Policy provides $10 million in coverage per claim and in the aggregate.  A copy of the OneBeacon Policy is attached hereto as **Exhibit 3**.

52.     The OneBeacon Policy's Insuring Agreement (A) provides:

The Underwriter shall provide the **Insured** with insurance excess of the **Underlying Insurance** set forth in ITEM 4 of the Declarations for Claims first made against the **Insured** during the **Policy Period**, provided that the **Underlying Insurance** also applies and has been exhausted by actual payment thereunder, or would apply but for the exhaustion of the applicable limit(s) of liability thereunder.

(Ex. 3, § I, Insuring Agreement (A).)

53.     The OneBeacon Policy describes "**Underlying Insurance**" as the Allied World Primary E&O Policy.

54.     The OneBeacon Policy is a "follow form excess policy" that includes Insuring Agreement (B):

This Policy will apply in conformance with, and will follow the form of, the terms, conditions, agreements, exclusions, definitions and endorsements of the **Underlying Insurance**, except:

(1) the Underwriter will have no obligation under this Policy with respect to any **Claim** that is settled without the Underwriter's written consent;

(2) with respect to any provisions to the contrary contained in this Policy;

(3) the applicable limit of liability of the **Underlying Insurance** shall be deemed to be reduced or exhausted solely as a result of payments for loss or damages (including costs, charges and expenses) that are covered under this Policy; and

(4) the coverage provided by this Policy shall not be broader than any **Underlying Insurance** unless expressly provided herein, including any endorsement hereto.

(Ex. 3, § I, Insuring Agreement (B).)

55.    The OneBeacon Policy also includes the following Insuring Agreement (C):

The Underwriter will not have any obligation to make any payment hereunder unless and until the full amount of the applicable limit of liability of the **Underlying Insurance** has been paid by the issuer(s) of the **Underlying Insurance**.

(Ex. 3, § I, Insuring Agreement (C).)

56.    The OneBeacon Policy contains the following Definitions (B)-(G):

"**Claim**" has the meaning ascribed to it in the **Underlying Insurance**.

"**Defense Expenses**" has the meaning ascribed to it (or similar term) in the **Underlying Insurance**.

"**Insured**" means the persons or organizations insured under the **Underlying Insurance**.

"**Policy Period**" means the period from the inception date to the expiration date in ITEM 2 of the Declarations, or to any earlier cancellation date.

"**Primary Policy**" means the policy scheduled as such in ITEM 5 of the Declarations.

"**Underlying Insurance**" means all policies scheduled in ITEM 5 of the Declarations and any policies renewing or replacing them.

(Ex. 3, § II, Definitions (B)-(G), as amended by Endorsement 1.)

57.     The OneBeacon Policy includes the following Underlying Insurance provision

(C):

> No amendment or modification to any **Underlying Insurance** shall be binding upon the Underwriter or effective in extending the coverage or limits of liability afforded by this Policy without the express written agreement of the Underwriter.

(Ex. 3, § III, Underlying Insurance (C).)

58.     The OneBeacon Policy contains the following Claim Participation provision:

> The Underwriter may, at its sole discretion, elect to associate in the investigation, settlement or defense of any **Claim** against the **Insured**, even if the **Underlying Insurance** has not been exhausted.  If the Underwriter so elects, the **Insured** will cooperate with the Underwriter and will make available all such information and records as the Underwriter may reasonably require.

(Ex. 3, § VI, Claim Participation.)

59.     The OneBeacon Policy contains the following Subrogation and Recoveries

provision:

> In the event of any payment under this Policy, the Underwriter will be subrogated to all the **Insured's** rights of recovery against any person or entity, and the **Insured** shall execute and deliver all instruments and papers and do whatever else is necessary to secure such rights.  The **Insured** shall do nothing that may prejudice the Underwriter's position or potential or actual right of recovery. The obligations of the **Insured** under this provision shall survive the expiration or termination of this Policy.  The expenses of all such recovery proceedings shall be first subtracted from the amount of any recovery and the remaining amount so recovered shall be apportioned in the inverse order to the extent of actual payment.

(Ex. 3, § VII, Subrogation and Recoveries.)

## **NATURE OF THE CONTROVERSY**

60.     BCBS-KS contends that it timely provided notice of the Underlying Lawsuits, and

subsequently the Provider and Subscriber Complaints, to Allied World and requested coverage

under both the Allied World Primary E&O Policy and the Allied World Primary D&O Policy.

61.     Allied World accepted BCBS-KS's tender of the Allied World Primary E&O

Policy and agreed to reimburse defense expenses incurred by BCBS-KS above the $500,000

retention, subject to the terms, conditions, limitations, and exclusions of the Allied World Primary E&O Policy, and subject to Allied World's reservation of rights.

62.     Allied World denied coverage under the Allied World Primary D&O Policy and has refused to reimburse defense expenses or provide BCBS-KS with indemnity under that policy.

63.     BCBS-KS contends it is entitled to coverage under the Allied World Primary D&O Policy.

64.     BCBS-KS has not done anything to formally contest Allied World's denial of coverage under the Allied World Primary D&O Policy.

65.     The $10 million limits of the Allied World Primary E&O Policy are nearing exhaustion due to mounting defense expenses related to the Underlying Lawsuits/MDL Action.

66.     On information and belief, once the limits of the Allied World Primary E&O Policy are exhausted, BCBS-KS will seek to trigger coverage and payments under the excess OneBeacon Policy.

67.     OneBeacon will be forced to choose between (a) agreeing to advance defense expenses and/or pay indemnity to BCBS-KS at the risk that OneBeacon will be prejudiced in or precluded from seeking reimbursement and/or subrogation of any amounts it was prematurely forced to pay due to Allied World's denial under the Allied World Primary D&O Policy; or (b) denying BCBS-KS's request to advance defense expenses and/or pay indemnity until coverage under the Allied World D&O Policy has been determined, which could expose OneBeacon to bad-faith allegations.

68.     In addition, OneBeacon has been attempting to investigate coverage for the Underlying Lawsuits/MDL Action since 2012.  As the parties to the Underlying Lawsuits/MDL

Action explore informal resolution, OneBeacon has been and will continue to be asked to evaluate coverage for any potential settlement or judgment.  Despite OneBeacon's requests, BCBS-KS refuses to provide reasonably requested information and documents necessary for OneBeacon to (1) assess BCBS-KS's potential liability in the Underlying Lawsuits consolidated in the MDL Action and (2) make determinations regarding coverage.  Thus, there is a bona fide present dispute between OneBeacon and BCBS-KS regarding the scope of the obligations of the parties under the Claim Participation/Assistance and Cooperation clauses.

69.   There are bona fide present disputes between OneBeacon, BCBS-KS, and Allied World regarding:

a.   whether BCBS-KS must exhaust all primary insurance, including both the Allied World Primary E&O Policy and the Allied World Primary D&O Policy, by the payment of covered loss by the issuer of the policies, before coverage is triggered under the excess OneBeacon Policy;

b.   the scope of the obligations of the parties under the Claim Participation/ Assistance and Cooperation clauses;

c.   whether BCBS-KS breached the Claim Participation/Assistance and Cooperation clauses;

d.   whether BCBS-KS's breach of the Claim Participation/Assistance and Cooperation clauses bars coverage;

e.   whether OneBeacon is entitled to specific performance under the Claim Participation/Assistance and Cooperation clauses in the form of specific information and documents; and

f.   in the event OneBeacon is forced to prematurely begin paying under the excess OneBeacon Policy, pursuant to the Subrogation and Recoveries clauses, to what extent does OneBeacon have the right to seek subrogation from other persons or entities, including Allied World.

## FIRST COUNT

### (Declaratory Relief Against BCBS-KS and Allied World: Exhaustion of All Primary Policies)

70.     OneBeacon hereby incorporates by reference and re-alleges as if fully stated herein, each and every allegation of Paragraphs 1 through 69 (including all subparagraphs) of this Complaint.

71.     An actual controversy exists between OneBeacon, on the one hand, and BCBS-KS and Allied World, on the other, with respect to whether BCBS-KS is required to exhaust all primary insurance, including both the Allied World Primary E&O Policy and the Allied World Primary D&O Policy, in order to trigger coverage under the excess OneBeacon Policy.

72.     The Other Insurance provision in the Allied World Primary E&O Policy – to which the OneBeacon Policy follows form – states, in pertinent:

This Policy shall be excess of and shall not contribute with:

(a) any other insurance or plan or program of self-insurance (whether collectible or not), unless such other insurance or self-insurance is specifically stated to be in excess of this Policy; .

(Ex. 1, § III, Condition (G), as amended by Endorsement No. 19.)

73.     BCBS-KS contends that it timely provided notice of the Underlying Lawsuits to Allied World and requested coverage under both the Allied World Primary E&O Policy and the Allied World Primary D&O Policy.

74.     Allied World accepted BCBS-KS's tender of the Allied World Primary E&O Policy subject to its reservation of rights.

75.     Allied World denied coverage under the Allied World Primary D&O Policy and has refused to provide BCBS-KS coverage.

76.     BCBS-KS contends it is entitled to coverage under the Allied World Primary D&O Policy.

77.     BCBS-KS has not done anything to formally contest Allied World's denial of coverage under the Allied World Primary D&O Policy.

78.     OneBeacon is entitled to a declaratory judgment in its favor that the OneBeacon Policy is excess and that BCBS-KS must properly exhaust all primary coverage before the OneBeacon Policy is triggered, including both the Allied World Primary E&O Policy and the Allied World Primary D&O Policy.

## SECOND COUNT

**(Declaratory Relief Against BCBS-KS: Duties Under Claim Participation and Cooperation Provisions of the OneBeacon Policy and the Allied World Primary E&O Policy)**

79.     OneBeacon hereby incorporates by reference and re-alleges as if fully stated herein, each and every allegation of Paragraphs 1 through 78 (including all subparagraphs) of this Complaint.

80.     An actual controversy exists between OneBeacon, on the one hand, and BCBS-KS, on the other, with respect to the parties' duties and obligations under the OneBeacon Policy (and by extension the Allied World Primary E&O Policy described above).  Because OneBeacon has elected to associate in the investigation of the Underlying Litigation and the MDL Action, OneBeacon contends that BCBS-KS must comply with the following Claim Participation clause in the OneBeacon Policy:

> The Underwriter may, at its sole discretion, elect to associate in the investigation, settlement or defense of any **Claim** against the **Insured**, even if the **Underlying Insurance** has not been exhausted.  If the Underwriter so elects, the **Insured** will cooperate with the Underwriter and will make available all such information and records as the Underwriter may reasonably require.

(Ex. 3, § VI.)

81.     Similarly, OneBeacon contends that BCBS-KS must comply with the Assistance and Cooperation clause in the Allied World Primary E&O Policy, to which the OneBeacon Policy follows form:

> In the event of a **Claim**, the **Insureds** shall provide the **Underwriter** with all information, assistance and cooperation that the **Underwrite**r reasonably requests.

(Ex. 1, § III, Condition (E).)

82.     OneBeacon further contends that the above-noted Claim Participation and Assistance and Cooperation clauses require BCBS-KS to provide information and documents reasonably requested by OneBeacon, including, but not limited to:

    a.   All written analyses or reports relating to BCBS-KS's potential exposure (including assessment of settlement value of the Subscriber and Provider claims);

    b.   All analyses of the liability allocation percentage for BCBS-KS;

    c.   A list of all persons deposed in the MDL Action and their employer/affiliation;

    d.   Summaries of all depositions taken in the MDL Action;

    e.   Any analyses of the impact of depositions taken in the MDL Action;

    f.     Any analyses regarding expert witnesses (including expert disclosures, reports and depositions) involved in the MDL Action;

    g.   Any analyses of the impact of recent rulings in the MDL Action including, but not limited to, the standard-of-review issue in the MDL Action;

    h.   Any discovery requests and responses thereto from the MDL Action;

    i.   All privilege logs served in the MDL Action, including but not limited to the privilege log as certified in November of 2017;

    j.   All documents produced by BCBS-KS in the MDL Action;

    k.   Any key documents (meaning those identified by BCBS-KS or other counsel for the Blues as having an impact on the merits of the MDL Action) produced, obtained or received in discovery;

    l.   All analyses of settlement offers or demands in the MDL Action;

m. Any communications regarding allocation of liability between BCBS-KS and other defendants in the underlying litigation, including regarding any formula that has been proposed to BCBS-KS to determine its allocation of any settlement or judgment;

n. Any communications regarding the expected contribution or percentage allocation of any settlement to the Association in the MDL Action;

o. Any internal communications regarding allocation of any aggregate settlement among potentially covered and uncovered causes of action in the MDL Action (excluding any communications between BCBS-KS and its coverage counsel);

p. Any communication regarding any allocation of any aggregate settlement among the requested relief and damages in the MDL Action;

q. All Term Sheets exchanged in the MDL Action and related to potential settlement of the MDL Action;

r. All written agreements, including licensing agreements, between BCBS-KS and the Association;

s. All communications received by BCBS-KS relating to the class action complaints and the MDL Action prior to retention of defense counsel;

t. All information, analysis, reports, PowerPoint presentations or other documents regarding potential claims in the MDL Action concerning ASOs (including the value of such claims, damage estimates and the value of any release of ASO claims in any settlement);

u. Any communications with an ASO relating to the MDL Action;

83. To date, and despite reasonable requests by OneBeacon, BCBS-KS has not provided the majority of the information or documents described in the preceding paragraph.

84. Instead, BCBS-KS has, through its coverage counsel, refused to provide the majority of the requested information and documents and has taken the position that OneBeacon's requests are covered by the mediation privilege. As to many of the documents, BCBS-KS's coverage counsel claims disclosure is barred by the attorney-client privilege and/or work product doctrine.

85. Therefore, an actual controversy presently exists between OneBeacon and BCBS-KS regarding the parties' rights and obligations and BCBS-KS's compliance with the

cooperation clauses in the policies.  OneBeacon is entitled to a declaratory judgment in its favor stating BCBS-KS must comply with the Claim Participation and Assistance and Cooperation clauses in order to be entitled to any coverage under the OneBeacon Policy.  Moreover, OneBeacon requests a declaratory judgment concerning the scope of the rights and obligations of the parties under the applicable Claim Participation and Assistance and Cooperation clauses.

## THIRD COUNT

**(Breach of Contract Against BCBS-KS: Claim Participation and Cooperation Provisions of the OneBeacon Policy and the Allied World Primary E&O Policy)**

86.     OneBeacon hereby incorporates by reference and re-alleges as if fully stated herein, each and every allegation of Paragraphs 1 through 85 (including all subparagraphs) of this Complaint.

87.     The OneBeacon Policy is a valid and enforceable contract.

88.     OneBeacon has performed all conditions, covenants, and promises required on its part to be performed under the OneBeacon Policy.

89.     BCBS-KS refuses to provide reasonably requested and relevant information and documents necessary for OneBeacon's coverage investigation in breach of the Claim Participation and Assistance and Cooperation clauses in the OneBeacon Policy and the Allied World Primary E&O Policy (to which the OneBeacon Policy follows form).

90.     As a result of BCBS-KS's breach of the contract, OneBeacon has been damaged in an amount to be determined at trial.

## FOURTH COUNT

### (Declaratory Relief Against BCBS-KS: No Coverage Due to Breach of Claim Participation and Cooperation Provisions of the OneBeacon Policy and the Allied World Primary E&O Policy)

91.    OneBeacon hereby incorporates by reference and re-alleges as if fully stated herein, each and every allegation of Paragraphs 1 through 90 (including all subparagraphs) of this Complaint.

92.    An actual controversy exists between OneBeacon, on the one hand, and BCBS-KS, on the other, with respect to whether BCBS-KS breached the Claim Participation and Assistance and Cooperation clauses in the OneBeacon Policy and the Allied World Primary E&O Policy (to which the OneBeacon Policy follows form) and whether this breach bars coverage.

93.    The above-noted cooperation clauses obligate BCBS-KS to disclose all of the facts within its knowledge, provide requested information and documents, and otherwise aid the insurer in its determination of coverage under the policy.

94.    BCBS-KS refuses to provide reasonably requested and relevant information and documents necessary for OneBeacon's coverage investigation in breach of the Claim Participation and Assistance and Cooperation clauses in the OneBeacon Policy and the Allied World Primary E&O Policy (to which the OneBeacon Policy follows form).

95.    BCBS-KS's breach of the above-noted cooperation clauses has substantially prejudiced OneBeacon in connection with the Underlying Lawsuits.

96.    OneBeacon is entitled to a declaratory judgment in its favor, stating that BCBS-KS's breach of the Claim Participation and Assistance and Cooperation clauses in the OneBeacon Policy and the Allied World Primary E&O Policy (to which the OneBeacon Policy follows form) bars coverage.

## FIFTH COUNT

### (Breach of Contract Against BCBS-KS: Specific Performance)

97.     OneBeacon hereby incorporates by reference and re-alleges as if fully stated herein, each and every allegation of Paragraphs 1 through 96 (including all subparagraphs) of this Complaint.

98.     The OneBeacon Policy is a valid and enforceable contract.

99.     OneBeacon has performed all conditions, covenants, and promises required on its part to be performed under the OneBeacon Policy.

100.    BCBS-KS continues to refuse to provide OneBeacon with reasonably requested and relevant information and documents necessary for OneBeacon's coverage investigation in breach of the Claim Participation and Assistance and Cooperation clauses in the OneBeacon Policy and the Allied World Primary E&O Policy (to which the OneBeacon Policy follows form).

101.    OneBeacon has no adequate remedy at law to obtain the requested information and documents.  Monetary damages are inadequate.

102.    OneBeacon will suffer irreparable injury absent BCBS-KS's cooperation as required by both the OneBeacon Policy and the Allied World Primary E&O Policy (to which the OneBeacon Policy follows form).

103.    OneBeacon should therefore be granted specific performance pursuant to the Claim Participation and Assistance and Cooperation clauses in the OneBeacon Policy and the Allied World Primary E&O Policy (to which the OneBeacon Policy follows form) and be provided with the information and documents necessary for a coverage determination.

## SIXTH COUNT

**(Declaratory Relief Against BCBS-KS: Extent of OneBeacon's Subrogation Rights)**

104.     OneBeacon hereby incorporates by reference and re-alleges as if fully stated

herein, each and every allegation of Paragraphs 1 through 103 (including all subparagraphs) of

this Complaint.

105.     The $10 million limits of the Allied World Primary E&O Policy will soon be

exhausted due to mounting defense expenses related to the Underlying Lawsuits and the MDL

Action.

106.     On information and belief, once the limits of the Allied World Primary E&O

Policy are exhausted, BCBS-KS will seek coverage for the Underlying Lawsuits and MDL

Action from OneBeacon under the excess OneBeacon Policy.

107.     OneBeacon will then be forced to choose between (a) agreeing to advance defense

expenses and/or pay indemnity to BCBS-KS at the risk that OneBeacon will be prejudiced in or

precluded from seeking reimbursement and/or subrogation of any amounts it was prematurely

forced to pay due to Allied World's denial under the Allied World Primary D&O Policy; or (b)

denying BCBS-KS coverage, which could expose OneBeacon to bad-faith allegations.

108.     Thus, an actual controversy exists regarding what rights OneBeacon would have

to seek subrogation against another person or entity in the event it is forced to prematurely begin

paying under the excess OneBeacon Policy.

109.     OneBeacon is entitled to a declaratory judgment in its favor stating that

OneBeacon has the right, pursuant to the Subrogation and Recoveries provisions of the

OneBeacon Policy and the Allied World Primary E&O Policy (to which the OneBeacon Policy

follows form), to seek subrogation against another person or entity, including Allied World, for

any sums that OneBeacon is prematurely forced to pay to BCBS-KS relating to the Underlying Lawsuits and/or the MDL Action.

**WHEREFORE,** OneBeacon prays for relief as follows:

1.     For a declaration of the rights, duties, and obligations of the parties herein as follows:

a.     That BCBS-KS must exhaust all primary insurance, including both the Allied World Primary E&O Policy and the Allied World Primary D&O Policy, by the payment of covered loss by the issuer of the policies, before coverage is triggered under the excess OneBeacon Policy;

b.     That OneBeacon is entitled to BCBS-KS's cooperation under the OneBeacon Policy including, but not limited to, the specific documents and information requested in Paragraph 82;

c.     That BCBS-KS breached the Claim Participation/Assistance and Cooperation clauses of the OneBeacon Policy and the Allied World Primary E&O Policy;

d.     That there is no coverage due to the BCBS-KS's breach of the Claim Participation/Assistance and Cooperation clauses of the OneBeacon Policy and the Allied World Primary E&O Policy;

e.     For specific performance by way of production of information and documents required by cooperation provisions of the policies; and

f.     That OneBeacon has the right to seek subrogation against another person or entity, including Allied World, for any sums that OneBeacon is prematurely

forced to pay to BCBS-KS relating to the Underlying Lawsuits and/or the MDL Action;

2.      For costs of suit; and

3.      For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

## DESIGNATION OF PLACE OF TRIAL

Pursuant to D. Kan. Local Rule 40.2, Plaintiff hereby designates Kansas City, Kansas as the location for trial.

DATED:  July 17, 2018

Respectfully Submitted,

/s/  *Brent N. Coverdale*
James D. Griffin, #KS 12545
Brent N. Coverdale, KS # 18798
SCHARNHORST AST KENNARD GRIFFIN P.C.
1100 Walnut Street, Suite 1950
Kansas City, MO  64106-2197
Telephone:  (816) 268-941
Facsimile:  (816) 268-9409
Email: jgriffin@sakg.com|
            bcoverdale@sakg.com

*Attorneys for Plaintiff*