IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BEDIVERE INSURANCE COMPANY, formerly d/b/a OneBeacon Insurance Company,<br><br>          Plaintiff/Counter-Defendant,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF KANSAS, INC.,<br><br>          Defendant/Counter-Plaintiff,<br><br>and<br><br>ALLIED WORLD SURPLUS LINES INSURANCE COMPANY f/k/a Darwin Select Insurance Company,<br><br>          Defendant.<br>_____<br><br>ALLIED WORLD SPECIALTY INSURANCE COMPANY, f/k/a Darwin National Assurance Company,<br><br>          Plaintiff/Counter-Defendant,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF KANSAS, INC.,<br><br>          Defendant/Counter-Plaintiff. | **CONSOLIDATED CASES**<br><br>Case No. 18-2371-DDC<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Case No. 18-2515-DDC |

O:\ORDERS\18-2371-DDC-155.DOCX

## **ORDER**

Plaintiff, Bedivere Insurance Company formerly d/b/a OneBeacon Insurance Company ("Bedivere"), brought this suit against Blue Cross Blue Shield of Kansas, Inc. ("BCBSKS") and Allied World Surplus Lines ("Allied World") for declaratory and monetary relief.[1]  BCBSKS and other Blue Cross entities are defendants in a series of antitrust actions that were consolidated into a multi-district litigation in the Northern District of Alabama.  BCBSKS has submitted claims for that MDL to its various insurers, which include the plaintiffs in these consolidated cases (i.e., Bedivere and Allied World), as well as nonparties Travelers and ACE, with whom BCBSKS has entered into confidential settlement agreements regarding coverage for the antitrust litigation.[2]  The instant action arises from Bedivere's allegations that (1) BCBSKS's claim regarding the MDL is premature because it hasn't exhausted other relevant policies; (2) BCBSKS has breached certain provisions of Bedivere's insurance policy; and (3) Bedivere is entitled to seek subrogation for amounts it alleges it prematurely paid.  BCBSKS has asserted counterclaims alleging Bedivere breached the contract, has dealt in bad faith, and has caused BCBSKS to suffer damages for Bedivere's failure to timely pay defense expenses.[3]

---

[1] ECF No. 1.  Case No. 18-2515-DDC is a related case; the two cases have been consolidated for discovery.

[2] ECF No. 158 at 2.

[3] ECF No. 65.

Bedivere served its second set of discovery requests to BCBSKS on October 7, 2020.[4] BCBSKS served responses on November 13, 2020.[5] Bedivere moves to compel responses to three requests for production and one interrogatory, which collectively seek: (1) BCBSKS's settlement agreements with Travelers and ACE; (2) BCBSKS's joint-defense agreement from the underlying antitrust litigation; and (3) information on class actions that BCBSKS tendered to its other insurers during the three-year period prior to the underlying litigation.[6] BCBSKS opposes the motion and moves for a protective order.[7] On January 19, 2021, the court granted the parties' joint motion to stay the indemnity claims (ECF No. 151), which stayed discovery on certain claims in the amended complaint. Neither party cites the stay as a basis for ruling on the instant motion. For the reasons set forth below, Bedivere's motion is granted in part and denied in part.

As a threshold matter, the court first considers whether the parties have sufficiently conferred regarding the motion. Fed. R. Civ. P. 37(a)(1) requires motions to compel discovery "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." The parties have exchanged multiple meet-and-confer

---

[4] ECF No. 133.

[5] ECF Nos. 143, 144, 145.

[6] ECF No. 155 at 2.

[7] ECF No. 158.

letters and phone calls,[8] and the court is satisfied the parties have conferred pursuant to Fed. R. Civ. P. 37(a)(1).

Analysis

Fed. R. Civ. P. 26(b)(1) allows parties to obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. At the discovery stage, relevance is broadly construed.[9] The proportionality standard moved to the forefront of Fed. R. Civ. P. 26(b) when the rule was amended in 2015, which reinforced the need for parties to focus on the avoidance of undue expense.[10] Proportionality is to be determined by considering, to the extent applicable, the following six factors: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.[11]

Although the court still considers relevance, the previous language defining relevance as "reasonably calculated to lead to the discovery of admissible evidence" was deleted in the 2015 amendment "because it was often misused to define the scope of

---

[8] ECF No. 155 at 3.

[9] *Mann v. XPO Logistics Freight, Inc.*, 2017 WL 3054125, at *3 (D. Kan. July 19, 2017) (citing *Erickson, Kernell, Derusseau, & Kleypas v. Sprint Sols., Inc.*, No. 16-mc-212-JWL, 2016 WL 3685224, at *4 (D. Kan. July 12, 2016)).

[10] *Frick v. Henry Indus., Inc.*, No. 13-2490-JTM-GEB, 2016 WL 6966971, at *3 (D. Kan. Nov. 29, 2016).

[11] Fed. R. Civ. P. 26(b)(1).

discovery and had the potential to 'swallow any other limitation.'"[12] As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.[13] With this standard in mind, the court turns to the discovery requests at issue in Bedivere's motion.

Settlement Agreements (Document Request Nos. 143 and 144)

Document Request No. 143 seeks:

The agreement between YOU and Travelers Casualty and Surety Company of America ("Travelers") under which Travelers has agreed to make payments related to the Antitrust Litigation under its Healthcare Organization Directors and Officers Excess Liability Policy, Policy No. 105647421.[14]

Document Request No. 144 seeks:

All coverage in place agreements between YOU and any other insurer related to the MDL Action.[15]

BCBSKS originally objected to these requests as irrelevant and protected by both the mediation privilege and confidentiality. BCBSKS maintains its relevance and

---

[12] *Brown v. Panhandle E. Pipeline Co. L.P.*, 2018 WL 263238, at *2 (D. Kan. Jan. 2, 2018).

[13] *Funk v. Pinnacle Health Facilities XXXII, LP*, 2018 WL 6042762, at *1–2 (D. Kan. Nov. 19, 2018).

[14] ECF No. 156-2 at 8.

[15] *Id.*

5

confidentiality objections in its response but hasn't asserted the agreements are privileged. Regardless, the Tenth Circuit hasn't recognized a settlement privilege under Rule 408.[16]

Confidentiality

BCBSKS moves for a protective order and argues the settlement agreements can't be compelled because they're confidential. But confidential settlement agreements are not barred from discovery.[17] "[L]itigants cannot shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality, and cannot modify the Federal Rules of Civil Procedure by agreement."[18] Courts in this district have protected confidential settlement agreements with nonparties by entering protective orders prohibiting their disclosure outside of the litigation. But they don't accept confidentiality as a basis for completely withholding discovery.[19]

---

[16] *See Loomis v. I-Flow, LLC*, No. CV 11-1007 JCH/ACT, 2013 WL 12330077, at *3 (D.N.M. June 28, 2013) ("Rule 408 precludes only the admissibility of settlement negotiations, not the discoverability of such evidence."); *High Point SARL v. Sprint Nextel Corp.*, No. CIV.A. 09-2269-CM, 2011 WL 3241432, at *7 (D. Kan. July 29, 2011).

[17] *High Point SARL*, 2011 WL 4008009, at *3; *see also Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB, 2007 WL 1246216, at *4 (D. Kan. April 27, 2007) (compelling production of settlements with prior defendants and third parties).

[18] *Brave Law Firm, LLC v. Truck Accident Lawyers Grp., Inc.*, No. 17-1156-EFM, 2019 WL 3740594, at *3 (D. Kan. Aug. 8, 2019) (quoting *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 642 (D. Kan. 2004)).

[19] *High Point*, 2011 WL 4008009, at *3 ("The court is not aware of any case sustaining a confidentiality objection as a basis for withholding discovery. Generally, the entry of a protective order limiting the disclosure of confidential information is sufficient to address a party's confidentiality concerns.").

Here, the court agrees with Bedivere that BCBSKS's confidentiality concerns are addressed by the agreed protective order entered in this case,[20] which prevents disclosure outside of this litigation.[21] BCBSKS's concerns relating to producing the settlement information to Bedivere are discussed in the relevance section. Thus, the court rejects confidentiality as a basis to protect the settlement agreements from production to Bedivere.

Relevance

The court next moves to whether the settlement agreements are relevant. Bedivere argues the settlement agreements are relevant to essential issues in this case, including "(i) the interpretation and potential trigger of coverage under Allied World's primary [directors and officers liability insurance] policy; (ii) the extent of [Bedivere's] subrogation rights, including its right to recover amounts that BCBSKS has received from its co-excess insurer, Travelers; and (iii) whether BCBSKS suffered any harm as a result of [Bedivere] not immediately paying its defense expenses."[22]

BCBSKS asserts the settlement agreements aren't relevant in this case, first arguing the agreements don't prove anything about whether coverage exists as to Allied World's policy, only that Allied World and BCBSKS "entered a compromise to settle their

---

[20] ECF No. 88.

[21] *Heartland Surgical*, 2007 WL 1246216, at *4 (noting the general protective order in the case would ensure a "certain degree of confidentiality" over settlement agreements of nonparties).

[22] ECF No. 159 at 9.

7

dispute."[23] Second, it argues the agreements aren't relevant because Bedivere hasn't asserted any subrogation claim.[24] Third, it argues Bedivere's harm argument doesn't apply to an excess insurer, as Travelers and ACE are here, because their policies sit above Bedivere's policy and haven't yet been reached in the antitrust litigation.[25]

Both parties made a notable effort to identify relevant case law and distinguish cases from the instant facts, an effort that's also evident in their extensive meet-and-confer process. Some courts require a party seeking confidential settlement agreements to meet a heightened standard; the District of Kansas applies only the general Rule 26 standard, requiring the party opposing the request to demonstrate it's not relevant.[26] Ultimately, as explained more fully below, the court is persuaded these agreements are relevant.

The court is wholly unimpressed by the outdated argument that the agreements are relevant because they "could lead to admissible evidence"[27] about whether other policies are triggered. As discussed above, that "reasonably calculated to lead to the discovery of admissible evidence" language in Rule 26(b) was deleted more than five years ago because of litigants' propensity to overuse it.

---

[23] ECF No. 158 at 4.

[24] *Id.*

[25] *Id.* at 5.

[26] *Moss v. Blue Cross & Blue Shield of Kansas, Inc.*, 241 F.R.D. 683, 694–95 (D. Kan. 2007) (discussing three potential standards for the discoverability of confidential settlement agreements, as set forth in *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677 (D. Kan. 2004)).

[27] *See* ECF No. 155 at 6.

8

But the court flatly rejects BCBSKS's argument that the agreements don't prove anything about coverage. This argument goes more the weight of the evidence rather than discoverability. The court agrees the existence of a settlement doesn't prove anything[28] but doesn't find *Slaven v. City of Chicago*, which the parties cite, to be instructive under the circumstances of this case.

The settlement agreements are relevant to the scope of Bedivere's potential subrogation rights. In *Moss v. Blue Cross & Blue Shield of Kansas, Inc.*, the plaintiff sought settlement agreements between the defendant and "persons who had no interest in this proceeding."[29] The court sustained the relevance objection there. In contrast, in *DIRECTV, Inc. v. Puccinelli*, the defendants sought settlement agreements between the plaintiff and people who would be witnesses in the case.[30] Although the court doesn't find either case totally analogous, the circumstances here are closer to those in *DIRECTV, Inc.* regarding third parties. The relationship between Travelers and ACE and this lawsuit is somewhat complicated – indeed, they are non-parties. But their dealings with BCBSKS in the underlying litigation are relevant here, to the extent Bedivere may bring a future subrogation claim (as plaintiff contends, it may be against Travelers or against BCBSKS, if there is some agreement between Travelers and BCBSKS as to their obligations).

---

[28] *Slaven v. City of Chicago*, No. 95 C 7310, 1999 WL 1024563, at *1 (N.D. Ill. Nov. 1, 1999).

[29] *Moss*, 241 F.R.D. at 694–95.

[30] *DIRECTV, Inc.*, 224 F.R.D. at 684.

9

Bedivere has asserted a count for relief regarding the scope of the subrogation rights, and the amended complaint contains numerous references to the potential for future subrogation.[31]

BCBSKS relies on *Homeland Insurance Company of New York v. Health Care Service Corporation* to argue it shouldn't be compelled to produce settlement agreements. *Homeland* involved coverage for the same antitrust litigation, and the court denied a motion to compel, specifically noting the "sole theory of relevance [was] that the settlement agreement may refute [an] exhaustion argument or otherwise give rise to a coverage defense."[32] There, the insured hadn't yet made a demand on its insurer and the court concluded the relevance of the agreements was speculative, denying the motion without prejudice and allowing for a future situation where the insured made a claim under the policy and asserted it had exhausted the underlying policies.[33] The difference here is, as Bedivere notes, BCBSKS *has* presented a claim for coverage from Bedivere, and Bedivere has begun reimbursing those defense expenses. The court finds the agreements are relevant to that issue.

---

[31] *See* ECF No. 55.

[32] *Homeland Ins. Co. of New York v. Health Care Serv. Corp.*, 330 F.R.D. 180, 182 (N.D. Ill. 2019).

[33] *Id.* (denying a similar motion to compel as "mere speculation that the settlement agreement might someday be relevant does not warrant overriding the interests inherent in the settling parties' decision to keep the agreement's terms confidential").

Finally, the settlement agreements are relevant to BCBSKS's counterclaim for bad faith. The court agrees with Bedivere that the counterclaim raises the issue of whether Bedivere was reasonable in contending that another policy had to be exhausted before Bedivere was on the hook for coverage.[34] Some of the cases cited by BCBSKS did deny the production of similar settlement agreements, instead deferring the issue until liability was resolved.[35] The distinction here relates to the issues BCBSKS already has injected into the litigation. Specifically, BCBSKS alleges Bedivere breached its duties to reimburse defense expenses and breached its duty of good faith and fair dealing.[36] The issues of whether, when, and how the coverage and reimbursement were triggered, as well as the damages that flow from the alleged breaches, may reasonably relate to the agreements with the settling insurers.

Bedivere asks, in part, for a declaration regarding its obligation to provide coverage. That determination will involve the exhaustions and conditions of its contract, as well as the interplay of the settling insurers' obligations. Add to that the counterclaims – especially the bad-faith claim[37] and Bedivere's responsive affirmative defenses,[38] which make the

---

[34] ECF No. 159 at 5.

[35] *See, e.g.*, *Wisconsin Elec. Power Co. v. N. Assur. Co. of Am.*, No. 07-C-277-S, 2007 WL 4631363, at *2 (W.D. Wis. Oct. 31, 2007) (denying a motion to compel settlement agreements).

[36] *See* ECF No. 69.

[37] *Id.*

[38] *See* ECF No. 70.

11

rights and obligations of each of the insurers relevant.  On balance, given that the issue of who is ultimately responsible for the ongoing defense expenses in the antitrust litigation is central to the claims in this case, the court concludes the settlement agreements should be produced.  The court will grant the motion to compel the settlement agreements.

Joint-Defense Agreement ("JDA") (Document Request No. 126)

Document Request No. 126 seeks:

The Joint Defense Agreement that YOU entered into in the MDL Action.[39]

BCBSKS objects that the JDA is irrelevant to the issues of the case, arguing it could assert its joint-defense privilege even if there were no formal joint defense agreement.[40]  It only has to establish (1) the documents were made in the course of a joint defense effort and (2) the documents were designed to further that effort.[41]  Further, BCBSKS argues the agreement itself is privileged under the work-product doctrine.

Bedivere argues the JDA is relevant because BCBSKS has "repeatedly invoked the joint defense privilege to justify its refusal to provide requested documents."[42]  Therefore, Bedivere argues, it's entitled to know what information is in the agreement governing what BCBSKS is allowed to disclose.  Bedivere argues BCBSKS has waived any privilege by

---

[39] ECF No. 156-2 at 7.

[40] ECF No. 158 at 13 (citing *Katz v. AT & T Corp.*, 191 F.R.D. 433, 438 (E.D. Pa. 2000)).

[41] *Id.*; *In re Grand Jury Proceedings*, 156 F.3d 1038, 1042–43 (10th Cir. 1998).

[42] ECF No. 155 at 11.

putting the terms of the JDA at issue.[43] Bedivere contends it would withdraw the request if BCBSKS confirms it *isn't* relying on the JDA.

The court agrees with BCBSKS. Bedivere hasn't shown why the terms of the agreement itself are relevant to the pleaded claims and defenses in this case. Further, the court isn't persuaded by Bedivere's argument that BCBSKS has waived its privilege. Case law is clear the joint-defense agreement is privileged, and Bedivere doesn't seem to dispute this characterization.[44] Beyond citing the standard for waiving privilege, Bedivere hasn't offered any on-point case law that compels production of a joint-defense agreement. Merely referencing that it's relying on the agreement, as Bedivere contends BCBSKS has done, doesn't waive the privilege. Absent a basis for waiver, the agreement remains privileged.[45] The court is satisfied with BCBSKS's proffer that it's relying on the privilege and denies Bedivere's motion to compel as to Document Request No. 126.

Information on Other Class Actions (Interrogatory No. 15)

Interrogatory No. 15 reads:

Identify all alleged CLASS ACTION CLAIMS tendered by BCBS-KS to its E&O and D&O insurance carriers from January 2009 to July 1, 2012.[46]

---

[43] ECF No. 159 at 10.

[44] *See, e.g.*, *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 217 (Tenn. Ct. App. 2002) (citing *Waller v. Financial Corp. of Am.,* 828 F.2d 579, 584 (9th Cir. 1987)).

[45] *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164 MLBDWB, 2007 WL 950282, at *10 (D. Kan. Mar. 26, 2007).

[46] ECF No. 156-2 at 15.

Bedivere argues its coverage policy contains a "related claim provision" that treats related class actions submitted within a three-year period as a single claim, and therefore, subject to a single-limit liability.[47] The interrogatory seeks the identification of other claims during that period of time.

BCBSKS argues the information isn't relevant because Bedivere doesn't have a pending claim for relief based on that related-claim provision. BCBSKS points to Bedivere's decision not to assert a claim concerning that provision in its complaint, amended complaint, or affirmative defenses.[48] It argues the scope of discovery is limited to information that is connected to the claims and defenses asserted by the parties, and because Bedivere didn't assert any defense on the related-claim provision, it can't seek discovery regarding an unasserted claim.

Bedivere argues the relevance analysis isn't limited to what's specifically stated in the pleadings and this information is relevant to BCBSKS's bad-faith counterclaim and Bedivere's affirmative defenses. Whether the antitrust litigation qualifies as a "related claim" under the policy may affect "whether and to what extent coverage is owed for the MDL action."[49] The court agrees with Bedivere that this information is relevant for the same reasons as discussed above. The scope of coverage in this case is essential. There may be a prior class action claim that impacts coverage for the antitrust litigation. To the

---

[47] ECF No. 155 at 13.

[48] ECF No. 158 at 16.

[49] ECF No. 155 at 13.

extent BCBSKS implies this is a fishing expedition and Bedivere may try to seek "discovery regarding *any* information pertaining to *any* provision or exclusion"[50] in a policy, the court rejects that argument. That's not what's before the court. Because the interrogatory is narrowly tailored and seeks relevant information, the court grants the motion to compel as to Interrogatory No. 15.

IT IS THEREFORE ORDERED that Bedivere's motion to compel (ECF No. 155) is granted in part and denied in part. BCBSKS shall respond to Document Request Nos. 143 and 144 and Interrogatory No. 15 by **March 22, 2021**. BCBSKS's objection as to Document Request No. 126 is sustained.

IT IS FURTHER ORDERED that BCBSKS's motion for protective order (ECF No. 158) is denied in accordance with the above-stated rulings.

Dated March 5, 2021, at Kansas City, Kansas.

                                                   s/ James P. O'Hara
                                                   James P. O'Hara
                                                   U.S. Magistrate Judge

---

[50] ECF No. 158 at 16.