# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ATLANTIC SPECIALTY INSURANCE COMPANY,**[1] <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> **BLUE CROSS AND BLUE SHIELD OF KANSAS, INC.,** <br><br> Defendant/Counter-Plaintiff, <br><br> v. <br><br> **ALLIED WORLD SURPLUS LINES INSURANCE COMPANY f/k/a DARWIN SELECT INSURANCE COMPANY and BLUE CROSS BLUE SHIELD ASSOCIATION,** <br><br> Defendants. | CONSOLIDATED CASES <br><br> Case No. 18-2371-DDC-JPO |
| **ALLIED WORLD SPECIALTY INSURANCE COMPANY, f/k/a DARWIN SELECT INSURANCE COMPANY,** <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> **BLUE CROSS AND BLUE SHIELD OF KANSAS, INC.,** <br><br> Defendant/Counter-Plaintiff. | Case No. 18-2515-DDC-JPO |

---

[1]   On November 16, 2021, the court granted an unopposed motion to substitute a party—*i.e.*, Atlantic Specialty Insurance Company for Bedivere Insurance Company f/d/b/a OneBeacon Insurance Company—in these consolidated cases under Fed. R. Civ. P. 25(c).

**MEMORANDUM AND ORDER**

This case involves an insurance coverage dispute.  On September 21, 2020, the court granted defendant Blue Cross Blue Shield Association's ("BCBSA") Motion to Dismiss.  Doc. 129.  As explained in that Order, plaintiff Bedivere Insurance Company f/d/b/a OneBeacon Insurance Company ("OneBeacon")[2] asserted just one claim against BCBSA—Count IX (Subrogation against BCBSA).  Doc. 129 at 4 (citing Doc. 55 at 41–42) (First Am. Complaint ¶¶ 142–49).  The court held that OneBeacon had failed to state a plausible claim for subrogation against BCBSA.  *See generally id.*  So, the court dismissed Count IX.  *Id.* at 35.  And, because Count IX's subrogation claim was the only claim asserted against BCBSA, the court directed the Clerk of the Court to terminate BCBSA as a defendant in the action.  *Id.*

Shortly after the court dismissed OneBeacon's sole claim against BCBSA, OneBeacon filed a "Motion for Entry of Rule 54(b) Judgment on Count IX."  Doc. 137.  BCBSA has filed an Opposition (Doc. 138), and OneBeacon has submitted a Reply (Doc. 142).[3]  For reasons explained below, the court grants the Motion for Entry of Rule 54(b) Judgment (Doc. 137).

**I.      Factual and Procedural Background**

On October 14, 2019, OneBeacon filed a First Amended Complaint against three defendants:  (1) Blue Cross and Blue Shield of Kansas, Inc. ("BCBSKS"); (2) Allied World

---

[2]     When the court issued its Order granting BCBSA's Motion to Dismiss and when the parties filed their papers on the pending Motion for Entry of Rule 54(b) Judgment on Count IX, OneBeacon still was the named plaintiff in the lead case of these consolidated actions.  As already explained, *supra* n.1, the court since has substituted Atlantic Specialty Insurance Company for OneBeacon.  For consistency, the court refers to the lead case's plaintiff as OneBeacon since it was the party who filed and briefed the pending motion.

[3]     OneBeacon's motion was fully briefed on November 13, 2020.  Before the court could rule this motion, however, defendant Blue Cross Blue Shield of Kansas, Inc. ("BCBSKS") filed a Motion to Stay the Case based on liquidation proceedings pending in the Commonwealth Court of Pennsylvania against then-plaintiff OneBeacon.  Doc. 161.  Magistrate Judge O'Hara granted the motion and stayed the consolidated case in our court.  Doc. 171.  On November 9, 2021, Judge O'Hara lifted the stay, Doc. 178, and the consolidated case since has resumed.

Surplus Lines Insurance Company f/k/a Darwin Select Insurance Company ("Allied World"); and (3) BCBSA.  Doc. 55.  Generally, OneBeacon seeks various declaratory relief against BCBSKS and Allied World under 28 U.S.C. § 2201.  *Id.*  As already explained, OneBeacon asserted only one claim against BCBSA—a subrogation claim in Count IX of the First Amended Complaint.  Doc. 55 at 41–42 (First Am. Compl. ¶¶ 142–49).

This lawsuit involves three insurance policies that BCBSKS purchased:  (1) a primary Managed Care Organization Errors and Omissions Liability Policy from Allied World, with a $10 million coverage limit ("Allied World E&O Policy"); (2) a primary Healthcare Organization's Directors and Officers Liability Policy from Allied World, with a $15 million coverage limit ("Allied World D&O Policy"); and (3) a Managed Care Errors and Omissions Excess Indemnity Policy from OneBeacon ("OneBeacon Policy").  Doc. 55 at 1–2 (First Am. Compl. ¶¶ 2–3).  BCBSKS also entered into License Agreements with BCBSA (the "License Agreements").  *Id.* at 2 (Am. Compl. ¶ 4); *see also* Docs. 55-5 & 55-6 (License Agreements).

BCBSKS requested reimbursement of defense expenses and indemnity coverage from Allied World under both the Allied World E&O Policy and the Allied World D&O Policy in connection with several antitrust class actions (the "Antitrust Litigation") asserted against BCBSKS, which have been "consolidated for pretrial discovery proceedings in the Northern District of Alabama."  Doc. 55 at 2, 25 (Am. Compl. ¶¶ 5–6, 72).  While Allied World, subject to a reservation of rights, agreed to provide coverage under the Allied World E&O Policy, it denied coverage under the Allied World D&O Policy.  *Id.* at 2, 25 (Am. Compl. ¶¶ 7, 73–74).  BCBSKS also seeks reimbursement of its defense expenses under the OneBeacon Policy.  *Id.* at 3 (Compl. ¶¶ 12–13).

The Allied World E&O Policy has been exhausted[4] and OneBeacon has started to reimburse BCBSKS for defense expenses under the OneBeacon Policy. *Id.* at 3, 26 (Am. Compl. ¶¶ 12, 79–80). OneBeacon seeks a judicial declaration about its Policy, *i.e.*, declaring whether it must provide coverage under it before BCBSKS exhausts the Allied World Primary D&O Policy. *Id.* at 3 (Am. Compl. ¶ 13). OneBeacon contends that its coverage is not triggered under the OneBeacon Policy terms until BCBSKS exhausts the Allied World Primary D&O Policy. *Id.* at 28 (Am. Compl. ¶ 85). OneBeacon also seeks other declarations about BCBSKS's and OneBeacon's rights and obligations under the OneBeacon Policy, and OneBeacon's subrogation rights against BCBSA and Allied World. *Id.* at 3–6, 26–28 (Am. Compl. ¶¶ 14–19, 27–28, 80–83).

But—relevant to the pending motion—OneBeacon's First Amended Complaint also alleged that its coverage obligation is not triggered yet because BCBSA must indemnify BCBSKS, and OneBeacon's coverage is only in excess of that alleged indemnification duty arising under the OneBeacon Policy's terms. *Id.* at 28–29 (Am. Compl. ¶ 86). OneBeacon alleged that, under the License Agreements, BCBSA has agreed to defend and hold BCBSKS harmless against claims arising from activities like those alleged in the Antitrust Litigation. *Id.* at 3, 24, 25 (Am. Compl. ¶¶ 9, 67, 77). But, OneBeacon alleged, BCBSKS "has not tendered its defense or sought indemnity from BCBSA" under the License Agreements' terms, nor has BCBSA "paid any defense expenses" on BCBSKS's behalf in connection with the Antitrust Litigation. *Id.* at 3, 25 (Am. Compl. ¶¶ 10–11, 78). So, OneBeacon's First Amended Complaint

---

[4] BCBSKS believes it is entitled to coverage under the Allied World D&O Policy and has filed a counterclaim against Allied World for wrongful denial of coverage in a related lawsuit filed by Allied World against BCBSKS, *Allied World Specialty Insurance Company v. Blue Cross & Blue Shield of Kansas, Inc.*, Case No. 18-2515-DDC-JPO. Doc. 55 at 2–3, 25 (Am. Compl. ¶¶ 8, 74–75). This case also is pending before this court. *Id.* And, the court has consolidated that case with the lead case filed by OneBeacon. *See* Doc. 54.

4

sought a declaration about its subrogation right under the OneBeacon Policy, and monetary relief against BCBSA "by way of subrogation for defense expenses" that OneBeacon already has reimbursed to BCBSKS because—in OneBeacon's view—its reimbursement was premature. *Id.* at 6 (Am. Compl. ¶¶ 27–28).

BCBSA moved to dismiss the sole claim against it (Count IX of the First Amended Complaint), arguing that plaintiff had failed to state a plausible subrogation claim against BCBSA. It argued that, under the License Agreements, BCBSA "agrees to save, defend, indemnify and hold [BCBSKS] . . . harmless from and against all claims, damages, liabilities and costs of every kind, nature and description which may arise *exclusively and directly as a result of the activities of BCBSA*." Doc. 55-5 at 7 (¶ 14) (emphasis added); Doc. 55-6 at 7 (¶ 14) (emphasis added). But, BCBSA asserted, OneBeacon's First Amended Complaint never alleged that the costs BCBSKS has spent defending the Antitrust Litigation are "exclusively and directly" tied to BCBSA's conduct. Doc. 84 at 2. Instead, BCBSA contended, the First Amended Complaint describes how the Antitrust Litigation alleges joint conduct among BCBSA, BCBSKS, and other member plans. *Id.* And so, BCBSA asserted, BCBSKS has no right to indemnification from BCBSA. And neither does OneBeacon because—according to BCBSA—any subrogation rights it holds cannot exceed BCBSKS's rights.

The court agreed with BCBSA's arguments. *See generally* Doc. 129. It found that "OneBeacon [made] merely a conclusory allegation that BCBSA must indemnify BCBSKS, and as subrogee, OneBeacon, for BCBSA's conduct in connection with the Antitrust Litigation." Doc. 129 at 35. But, OneBeacon failed to allege any *facts* to support a plausible claim that BCBSA's activities were the exclusive and direct cause of the defense costs for which OneBeacon has provided coverage to BCBSKS. *Id.* So, the court granted BCBSA's Motion to

5

Dismiss, dismissed Count IX (the subrogation claim against BCBSA), and directed the Clerk of the Court to terminate BCBSA as a defendant in this action. *Id.*

Now, OneBeacon asks the court to enter a judgment under Fed. R. Civ. P. 54(b) against Count IX's subrogation claim. It argues that the court's Memorandum and Order (Doc. 129) dismissing that subrogation claim is a final order and no just reason exists to delay granting appellate review of that Memorandum and Order. The court considers OneBeacon's arguments supporting a Rule 54(b) judgment, below. But first, the court recites the legal standard governing OneBeacon's motion.

## II.    Legal Standard

Rule 54(b) provides that when an action involves multiple claims or parties, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). District courts do not grant Rule 54(b) requests "routinely." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980). As our Circuit has cautioned, "trial courts should be reluctant to enter Rule 54(b) orders since the purpose of this rule is a limited one: to provide a recourse for litigants when dismissal of less than all their claims will create undue hardships." *Okla. Tpk. Auth. v. Bruner*, 259 F.3d 1236, 1242 (10th Cir. 2001) (citation and internal quotation marks omitted).

Before entering a Rule 54(b) judgment, the court must make two determinations: first, the court "must determine that the order it is certifying is a final order[,]" and second, the court must conclude that "there is no just reason to delay review of the final order until it has conclusively ruled on all claims presented by the parties to the case." *Id.* (citing *Curtiss-Wright Corp.*, 446 U.S. at 7–8).

*First*, to qualify as a "final judgment," the disposition "must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp.*, 446 U.S. at 7 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)).

*Second*, even if a disposition qualifies as a final judgment, it doesn't qualify for a Rule 54(b) judgment unless the court determines that no just reason exists for delaying appellate review. The Supreme Court instructs: "Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Id.* at 8. Instead, Rule 54(b) requires the district court "to act as a 'dispatcher[,]'" exercising its "sound judicial discretion" to decide "the 'appropriate time' when each final decision in a multiple claims action is ready for appeal[,]" while also considering the "interest of sound judicial administration." *Id.* (quoting *Sears, Roebuck & Co.*, 351 U.S. at 435, 437). This governing standard for Rule 54(b) judgments "'preserves the historic federal policy against piecemeal appeals.'" *Id.* (quoting *Sears, Roebuck & Co.*, 351 U.S. at 438). Relevant factors that the court should consider when making the Rule 54(b) determination "include 'whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [is] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.'" *New Mexico v. Trujillo*, 813 F.3d 1308, 1316 (10th Cir. 2016) (quoting *Curtiss-Wright Corp.*, 446 U.S. at 8).

### III.   Analysis

Applying the governing legal standard, the court considers the two requirements for entering a Rule 54(b) judgment: (1) whether the Memorandum and Order dismissing Count IX's

7

subrogation claims is "a final order[,]" and (2) whether "there is no just reason to delay review of the final order until [the court] has conclusively ruled on all claims presented by the parties to the case." *Okla. Tpk. Auth.*, 259 F.3d at 1242 (citing *Curtiss-Wright Corp.*, 446 U.S. at 7–8).

The *first* requirement is met here. Indeed, the parties don't dispute that the court's Memorandum and Order dismissing OneBeacon's subrogation claim against BCBSA qualifies as a final judgment. *See* Doc. 138 at 3 ("BCBSA does not dispute the first factor[.]"); *see also id.* at 2 ("[BCBSA] does not dispute that the one count brought against it has been dismissed and is final for purposes of Rule 54(b)" and that "the [subrogation] claim brought against it is legally distinct from the remaining claims in the case"). The court's Memorandum and Order disposed of the lone claim asserted against BCBSA in a multi-party, multi-claim lawsuit. Thus, the court's disposition was a "'judgment' in the sense that it is a decision upon a cognizable claim for relief," and it was "'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp.*, 446 U.S. at 7 (quoting *Sears, Roebuck & Co.*, 351 U.S. at 436). Thus, the court finds, the Memorandum and Order is a "final order" for Rule 54(b) purposes. *Okla. Tpk. Auth.*, 259 F.3d at 1242.

The *second* requirement presents a harder question. The parties sharply dispute whether "there is no just reason for delay" of appellate review. Fed. R. Civ. P. 54(b). OneBeacon argues that no just reason for delay exists because the subrogation claim is separable from the other claims remaining in the case. OneBeacon asserts that the subrogation claim involves a different party, a different claim, and a different contract with different language than those involved in its remaining claims against BCBSKS and Allied World. And, OneBeacon contends, none of the remaining claims are interrelated to the stand-alone subrogation claim. Also, OneBeacon argues,

8

an appeal of the court's dismissal of the subrogation claim won't require the appellate court to decide the same issue more than once even if subsequent appeals follow it to the Circuit.

BCBSA disagrees. It argues that OneBeacon hasn't come forward with any "undue hardships" it will incur if the court doesn't enter a Rule 54(b) judgment. *Okla. Tpk. Auth.*, 259 F.3d at 1242. Also, BCBSA asserts that the "judicial administrative interests" favor denying a Rule 54(b) judgment. *Curtiss-Wright Corp.*, 446 U.S. at 8. Although BCBSA concedes that the dismissed subrogation claim involves different facts, different parties, and a different legal theory, BCBSA contends that the entire lawsuit involves legal questions about whether OneBeacon is obligated to provide insurance coverage to BCBSKS for expenses incurred in the Antitrust Litigation, and whether other entities—such as BCBSA or Allied World—must cover those expenses. BCBSA argues that the interests in judicial efficiency favor addressing these coverage issues in one appeal rather than "'piecemeal appeals'"—something that "'historic federal policy'" disfavors. *Id.* (quoting *Sears, Roebuck & Co.*, 351 U.S. at 438).

OneBeacon's Reply responds to BCBSA's "undue hardships" argument, asserting that it continues to pay Antitrust Litigation expenses that—it contends—BCBSA should pay.[5] OneBeacon thus argues that delaying appeal of the Order is prejudicial because it requires OneBeacon to continue paying expenses that, in its view, it isn't obligated to pay because the License Agreements obligate BCBSA to pay them. The court agrees with OneBeacon. OneBeacon has identified an "undue hardship[ ]" that it will incur if the court declines to enter

---

[5] Although the court usually doesn't consider new arguments raised for the first time in a Reply, *Liebau v. Columbia Cas. Co.*, 176 F. Supp. 2d 1236, 1244–45 (D. Kan. 2001), the court doesn't view OneBeacon's "undue hardships" argument a new one. Instead, OneBeacon's argument responds directly to BCBSA's Opposition and this specific criticism BCBSA levies against OneBeacon's opening brief. Thus, it's not improper argument on a Reply. *See Carter v. Spirit AeroSystems, Inc.*, No. 16-1350-EFM, 2019 WL 3732684, at *12 (D. Kan. Aug. 8, 2019) (concluding that where defendant "merely replied to the arguments raised in [plaintiff's] Response and pointed out deficiencies in [plaintiff's] Response," these were "acceptable uses for a reply").

9

Rule 54(b) judgment. *Okla. Tpk. Auth.*, 259 F.3d at 1242. Thus, OneBeacon has come forward with a reason that fits within the "limited" purpose of Rule 54(b)—*i.e.*, "to provide a recourse for litigants when dismissal of less than all their claims will create undue hardships." *Okla. Tpk. Auth.*, 259 F.3d at 1242 (citation and internal quotation marks omitted).

Also, the judicial efficiency factors don't favor delaying entry of Rule 54(b) judgment. Although—as BCBSA argues—the remaining claims involve factual questions whether OneBeacon or some other entity (including BCBSA) must provide coverage to BCBSKS for the Antitrust Litigation expenses, the factual and legal questions relevant to the subrogation claim are separable and distinct from the other claims in the case. As BCBSA concedes, the subrogation claim involves a different contract and different legal theory than the claims remaining in the case. *See* Doc. 138. Thus, it's unlikely that "a subsequent appeal of the claims before the district court will require the court of appeals to revisit the same issues decided in the first appeal." *Jordan v. Pugh*, 425 F.3d 820, 827 (10th Cir. 2005). So, the concern that "separate appeals will be redundant" isn't present here. *Id.*; *see also Hartford Fire Ins. Co. v. P & H Cattle Co., Inc.*, No. 05-2001-DJW, 2006 WL 3612661, at *7–8 (D. Kan. Dec. 11, 2006) (entering Rule 54(b) judgment for orders adjudicating plaintiff surety's indemnity claims against certain defendants because, among other reasons, the adjudicated claims were the "primary claims asserted in the case" and the "only remaining claims for debt and to set aside fraudulent conveyances [were] claims toward collection of the judgment entered against" a separate group of defendants).

After considering the relevant factors, the court concludes "there is no just reason for delay" of appellate review. Fed. R. Civ. P. 54(b). Thus, both requirements for a Rule 54(b) judgment are satisfied here: (1) the court's Memorandum and Order dismissing the subrogation

claim asserted against BCBSA is a final judgment, and (2) no just reason exists to delay entering judgment against this claim. Although the court recognizes that entering Rule 54(b) judgment is not something courts do "routinely[,]" *Curtiss-Wright Corp.*, 446 U.S. at 10, OneBeacon's request here for a Rule 54(b) judgment qualifies for the "limited" purpose of the Rule and thus is warranted, *Okla. Tpk. Auth.*, 259 F.3d at 1242 (citation and internal quotation marks omitted). The court thus grants OneBeacon's Motion for Entry of Rule 54(b) Judgment on Count IX and directs the Clerk of the Court to enter Judgment on Count IX under Rule 54(b). The Judgment should reflect the decision rendered by the court's Memorandum and Order dated September 21, 2020 (Doc. 129). Specifically, the Judgment should enter judgment in favor of defendant Blue Cross Blue Shield Association on plaintiff OneBeacon Insurance Company's claim for subrogation in Count IX of the First Amended Complaint (Doc. 55).

### IV.     Conclusion

For reasons explained, the court grants the Motion for Entry of Rule 54(b) Judgment on Count IX (Doc. 137).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Entry of Rule 54(b) Judgment on Count IX (Doc. 137) is granted. The court directs the Clerk of the Court to enter Judgment under Rule 54(b) against Count IX.

**IT IS SO ORDERED.**

Dated February 15, 2022, at Kansas City, Kansas.

                                                **s/ Daniel D. Crabtree**
                                                **Daniel D. Crabtree**
                                                **United States District Judge**