IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY,[1] | **CONSOLIDATED CASES** |
| Plaintiff/Counter-Defendant, | |
| v. | Case No. 18-2371-DDC |
| BLUE CROSS AND BLUE SHIELD OF KANSAS, INC., | |
| Defendant/Counter-Plaintiff, | |
| and | |
| ALLIED WORLD SURPLUS LINES INSURANCE COMPANY f/k/a Darwin Select Insurance Company, and BLUE CROSS BLUE SHIELD ASSOCIATION, | |
| Defendants. | |
| ALLIED WORLD SPECIALTY INSURANCE COMPANY, f/k/a Darwin National Assurance Company, | |
| Plaintiff/Counter-Defendant, | |
| v. | Case No. 18-2515-DDC |
| BLUE CROSS AND BLUE SHIELD OF KANSAS, INC., | **(This Memorandum and Order Only Applies to Case No. 18-2515-DDC)** |
| Defendant/Counter-Plaintiff. | |

---

[1] On November 16, 2021, the court substituted Atlantic Specialty Insurance Company ("ASIC") for Bedivere Insurance Company f/d/b/a OneBeacon Insurance Company. (ECF 180.)

**MEMORANDUM AND ORDER**

This matter comes before the court on Allied World Specialty Insurance Company's ("Allied World") Motion to Compel (ECF 250) and Blue Cross and Blue Shield of Kansas, Inc.'s ("BCBSKS") Cross-Motion for Protective Order (ECF 254). At the heart of these motions is whether BCBSKS must produce to Allied World the settlement agreement it entered with Atlantic Specialty Insurance Company f/d/b/a Bedivere Insurance Company f/d/b/a OneBeacon Insurance Company ("OneBeacon")[2] in the lead case of these consolidated actions. For the reasons discussed below, the court holds the settlement agreement is discoverable and not subject to protection. Accordingly, Allied World's motion to compel is granted, and BCBSKS's motion for a protective order is denied.

**I.   BACKGROUND**

In 2012, several healthcare providers and subscribers filed class-action antitrust lawsuits against multiple Blue Cross Blue Shield member plans ("Blues"), including BCBSKS, and the Blue Cross Blue Shield Association ("BCBSA"). The lawsuits claim that the Blues and BCBSA conspired to under-compensate healthcare providers for their services and to increase healthcare costs to subscribers by coordinating operations and limiting Blues' activities through restrictions in their trademark licenses (such as giving individual Blues exclusive service areas to limit competition). The Judicial Panel on Multidistrict Litigation consolidated the lawsuits for discovery and pretrial purposes in the Northern District of Alabama, thus creating the multidistrict litigation captioned *In Re: Blue Cross Blue Shield Antitrust Litigation* (the "Antitrust Litigation").

---

[2] As explained in *supra* n.1, ASIC is OneBeacon's successor in interest and the current party in the lead case. It is also the party that entered into the settlement agreement with BCBSKS. But for clarity and consistency across the court's rulings on the discoverability of settlement agreements in these consolidated cases, this Memorandum and Order continues to refer to the plaintiff in the lead case as OneBeacon. (*See* ECF 187, at n.2.)

BCBSKS submitted claims arising from the Antitrust Litigation to its various insurers under five separate policies:

- Allied World primary Healthcare Organization's Directors and Officers ("D&O") Liability Policy ("Allied World Primary D&O Policy");

- Allied World primary Managed Care Organization Errors and Omissions ("E&O") Liability Policy ("Allied World Primary E&O Policy");

- OneBeacon excess Managed Care Organization E&O Indemnity Policy ("OneBeacon Excess E&O Policy");

- Travelers Casualty and Surety Company of America ("Travelers") excess D&O policy; and

- ACE second excess E&O policy.

Allied World accepted BCBSKS's tender under the Allied World Primary E&O Policy and agreed to reimburse defense expenses incurred by BCBSKS in the Antitrust Litigation subject to the policy's terms, conditions, limitations, and exclusions, as well as Allied World's reservation of rights.  However, Allied World denied coverage under the Allied World Primary D&O Policy. When Allied World's Primary E&O Policy limit of $10 million was exhausted, OneBeacon began reimbursing BCBSKS for defense expenses under the OneBeacon Excess E&O Policy.

In the first of these consolidated cases, OneBeacon filed a complaint against BCBSKS and Allied World seeking a declaratory judgment that coverage under the OneBeacon Excess E&O Policy was not triggered until BCBSKS had exhausted other insurance policies, including the Allied World Primary D&O Policy.  (ECF 55, at 3.)  Specifically, OneBeacon asked the court to determine "the parties' rights and liabilities under the [OneBeacon Excess E&O] Policy . . . and the Allied World Primary D&O Policy, both of which potentially provide liability insurance to BCBS-KS, as well as OneBeacon's right to seek subrogation against Allied World for payments made on its behalf" to BCBSKS for litigation defense costs.  (*Id.* at 6.)   BCBSKS asserted

counterclaims against OneBeacon for breach of contract and breach of the duty of good faith and fair dealing, alleging it was damaged by OneBeacon's bad-faith delay in paying defense expenses. (ECF 69.)

In this second consolidated case, Allied World sued BCBSKS seeking a declaratory judgment that the Allied World Primary D&O Policy does not provide BCBSKS with coverage for the Antitrust Litigation. (ECF 1 in Case No. 18-2515.) Among other things, Allied World asserts there is no coverage because the Antitrust Litigation alleges BCBSKS acted wrongfully in performing managed care activities, which is covered by the Allied World Primary E&O Policy but which the Allied World Primary D&O Policy excludes from coverage. (*Id.* at 15-16.) BCBSKS filed counterclaims for declaratory relief, breach of contract, and breach of the duty of good faith and fair dealing. (ECF 16 in Case No. 18-2515, at 27-29.) BCBSKS asserts that Allied World breached the Primary D&O Policy and breached the duty of good faith and fair dealing by "unjustifiably refusing to pay BCBSKS's Defense Costs for the [Antitrust Litigation.]" (*Id.* at 29.)

On January 19, 2021, the court granted a joint motion by all parties in the consolidated cases to stay discovery related to "OneBeacon's and Allied World's respective alleged duties to indemnify BCBSKS for a judgment or settlement in the Antitrust Litigation." (ECF 151, at 2.) Thus, the parties proceeded to actively litigate only claims and defenses related to BCBSKS's defense expenses for the Antitrust Litigation.

In 2020, BCBSKS entered into confidential settlement agreements resolving its coverage disputes with nonparties Travelers regarding excess D&O coverage and ACE regarding excess E&O coverage. During discovery in the lead case, OneBeacon sought copies of those settlement agreements. (ECF 156-2, at 8.) BCBSKS objected to producing the agreements, arguing they were not relevant and were protected by confidentiality. OneBeacon then moved to compel

production of those settlement agreements (and other discovery that is not pertinent here).  (ECF 155.)

On March 5, 2021, U.S. Magistrate Judge James P. O'Hara granted the motion to compel BCBSKS to produce those settlement agreements.  (ECF 160.)  Judge O'Hara overruled BCBSKS's relevance objection, finding the settlement agreements relevant to both OneBeacon's claims and to BCBSKS's counterclaims.  First, he found the Travelers settlement agreement bore on OneBeacon's subrogation claim because any payment by Travelers (which was on the same "excess level" as OneBeacon) should be used toward BCBSKS's defense expenses.  (*Id.* at 9-10.)  Second, he found both settlement agreements relevant to OneBeacon's claim for a declaratory judgment that coverage under the OneBeacon Excess E&O Policy was not triggered until BCBSKS exhausted both of Allied World's primary policies (and to BCBSKS's counterclaim to the contrary) because those settlement agreements could reveal the parties' positions about (a) whether the Allied World Primary D&O Policy (which mirrors the form of the Travelers D&O policy) was triggered and (b) whether *any* excess E&O policy (like the ACE policy) was triggered before exhaustion.  (*Id.* at 11-12.)  Third, and most pertinent to the instant dispute, Judge O'Hara found the settlement agreements relevant to BCBSKS's counterclaim for damages allegedly caused by OneBeacon's bad-faith delay in paying BCBSKS's defense costs because any payments to BCBSKS under the agreements could have alleviated such damages.  (*Id.*)  Finally, Judge O'Hara rejected BCBSKS's confidentiality objection, finding the Agreed Protective Order in the case provided protection from disclosure outside the litigation and that the relevance of the settlement agreements justified disclosure to parties to the litigation.  (*Id.* at 7, 12.)

Upon objection by BCBSKS, U.S. District Judge Daniel D. Crabtree affirmed Judge O'Hara's Order on February 22, 2022.  (ECF 187.)  As to the question of whether the settlement

agreements were relevant, Judge Crabtree focused on their relevance to BCBSKS's bad-faith counterclaim.[3] (*Id.* at 11-12.) After noting that BCBSKS would be required "to prove causation and damages," he reasoned that "if BCBSKS received payments from either the Travelers or ACE settlement that it used to pay the Antitrust Litigation expenses, then BCBSKS might not have sustained any damage from alleged delay or refusal by OneBeacon to pay the Antitrust Litigation expenses." (*Id.* at 12.) Judge Crabtree thus upheld Judge O'Hara's relevance finding. Likewise, Judge Crabtree upheld Judge O'Hara's denial of BCBSKS's request for a protective order based on confidentiality concerns. (*Id.* at 7-11.) Judge Crabtree found that "even if producing the agreements may impose some harm on BCBSKS, the settlement agreements' relevance to the issues here outweighs any potential harm to BCBSKS." (*Id.* at 9.)

On June 28, the parties in the two consolidated actions participated in mediation. (ECF 229, 230.) During the mediation, the parties in the lead case agreed to settle all of their claims. (ECF 229.) OneBeacon and BCBSKS subsequently documented their settlement in a written settlement agreement and release ("the OneBeacon Settlement Agreement"). (ECF 252-1, at 3.) On August 25, OneBeacon, BCBSKS, and Allied World filed a Joint Stipulation of Dismissal with Prejudice. (ECF 239.) The parties in the second action did not resolve their claims, however, and discovery is ongoing.

On July 1, Allied World served BCBSKS a document request seeking a copy of the OneBeacon Settlement Agreement. (ECF 242-1.) BCBSKS objected on relevance grounds, just as it did when it was previously asked to produce the Travelers and ACE settlement agreements. (ECF 250-2, at 4.) Allied World now moves the court to overrule that relevance objection and to

---

[3] Judge Crabtree did not address the other bases on which Judge O'Hara found the settlement agreements relevant.

compel BCBSKS to produce a copy of the OneBeacon Settlement Agreement. In doing so, Allied World relies largely on the court's prior decisions compelling production of the Travelers and Ace agreements in the lead case. In response, BCBSKS asks the court to uphold its relevance objection, but, barring that, to issue a protective order precluding discovery of the OneBeacon Settlement Agreement.

## II.     ALLIED WORLD'S MOTION TO COMPEL IS GRANTED

The court begins its analysis by considering whether the OneBeacon Settlement Agreement is discoverable, absent a protective order allowing BCBSKS to withhold it. Parties may conduct "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). Here, the parties disagree about whether the OneBeacon Settlement Agreement is "relevant to any party's claim or defense." Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment to Rule 26); *see also Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (analyzing the 2015 amendment and concluding that it did not change the scope of discovery but clarified it, and therefore *Oppenheimer* still applies).

Allied World asserts that the OneBeacon Settlement Agreement is relevant to BCBSKS's counterclaims against it for breach of contract and breach of the duty of good faith and fair dealing (*i.e.*, bad faith). According to Allied World, the present situation is not materially different than when OneBeacon sought production of BCBSKS's settlement agreements with Travelers and ACE. As discussed above, one of the grounds on which the court concluded that the BCBSKS's

settlement agreements with its other insurers were relevant was that they could bear on BCBSKS's bad-faith counterclaim.  To succeed on a bad-faith counterclaim, BCBSKS must prove causation and damages.  *See Wade v. EMCASCO Ins. Co.,* 483 F.3d 657, 673 (10th Cir. 2007) ("Because the duty of good faith is an obligation arising from the contract itself, general principles of contract law apply, including the required elements of causation and damages.").  The court found that if the settlement agreements indicate that "BCBSKS received payments from [a] settlement that it used to pay the Antitrust Litigation expenses, then BCBSKS might not have sustained any damage from alleged delay or refusal by OneBeacon to pay the Antitrust Litigation expenses." (ECF 187, at 12 (citing *Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.,* 130 Cal. App. 4th 1078, 1093 (Cal. Ct. App. 2005), for the proposition that "where one insurer fully protects the insured by providing a defense and full coverage for a claim, a second insurer's refusal to defend generally cannot support a tort action for breach of the covenant of good faith and fair dealing because the latter's conduct will not enhance the insured's cost of defending itself or its exposure to liability").)

Under the same logic, the court finds the OneBeacon Settlement Agreement relevant to BCBSKS's bad-faith counterclaim against Allied World.  Although the coverage disputes in the two consolidated cases are different,[4] BCBSKS's bad-faith counterclaims are essentially the same: BCBSKS alleges it was damaged by the insurers' bad-faith delay or refusal to pay its defense costs for the Antitrust Litigation.  (ECF 69; ECF 16 in Case No. 18-2515.)  Thus, the court again finds that BCBSKS's settlement agreement with one of its insurers is relevant to the determination of whether and to what extent BCBSKS indeed suffered damages caused by the actions or inactions of the counterclaim defendants.  If OneBeacon agreed to make payments to BCBSKS that

---

[4] For this reason, the other relevance grounds identified by Judge O'Hara (such as relevance to OneBeacon's horizontal exhaustion defense) do not apply here, and Allied World does not rely on them in support of its motion to compel.

BCBSKS could use towards its defense costs for the Antitrust Litigation, that could have an impact on the damages potentially recoverable on BCBSKS's counterclaim against Allied World.

BCBSKS attempts to dispute the OneBeacon Settlement Agreement's relevance to its bad-faith counterclaim by asserting that the agreement "contains no provision in which [OneBeacon] agrees to pay BCBSKS's defense expenses." (ECF 252, at 5.) In support of this assertion, BCBSKS relies on an affidavit from one of its attorneys, Kevin D. Tessier, and states that Allied World can determine the defense expenses OneBeacon paid by reviewing other documents produced in discovery. (ECF 252-1.) The court is not persuaded by BCBSKS's argument that the OneBeacon Settlement Agreement is not relevant based on counsel's representation of what it does not say. Rather, this argument would seem to validate Allied World's position that the contents of the settlement agreement are relevant to an issue in this case. If the contents of the agreement were not relevant, then Mr. Tessier would have had no need to testify about them. Even if the court takes Mr. Tessier at his word that the OneBeacon Settlement Agreement does not *expressly* provide payments for BCBSKS's litigation defense expenses, savvy counsel can find creative ways to structure settlements. Allied World's review of the settlement agreement may lead it to perceive a way in which OneBeacon's payments *indirectly* impact coverage for BCBSKS's defense expenses. For this same reason, the court declines BCBSKS's request for the court to review the settlement agreement *in camera*. Allied World is in the best position to analyze the agreement's payment structure to determine whether and how it might reflect OneBeacon's payment of BCBSKS's defense expenses—indirectly, conditionally, or otherwise. The court therefore overrules BCBSKS's relevance objection and finds the OneBeacon Settlement Agreement discoverable.

### III. BCBSKS'S MOTION FOR PROTECTIVE ORDER IS DENIED

Because the court finds the OneBeacon Settlement Agreement generally discoverable, the court goes on to consider BCBSKS's request for a protective order permitting it to nonetheless withhold the document on confidentiality grounds. BCBSKS contends that "[f]orcing BCBSKS to disclose its confidential settlement with [OneBeacon] to Allied World will prejudice BCBSKS." (ECF 252, at 5.) Specifically, BCBSKS argues that if Allied World obtains the settlement agreement, Allied World would "have an unfair advantage in future settlement negotiations because [it] would know what concessions [BCBSKS] was willing to give other insurers." (*Id.* at 6.)

The court rejects BCBSKS generalized request for protection. A settlement agreement's "confidentiality does not bar discovery." *Burke v. Regalado*, 935 F.3d 960, 1048 (10th Cir. 2019) (ordering production of settlement agreement that was relevant to damages-setoff analysis). Although Federal Rule of Civil Procedure 26(c) gives courts discretion to issue protective orders over otherwise-discoverable documents (settlement agreements included), movants seeking such orders must show good cause for protection by demonstrating "specific prejudice or harm" with "particular and specific facts rather than conclusory assertions." *Williams v. Nex-Tech Wireless, L.L.C.,* No. 15-4888-SAC, 2016 WL 11468885, at *4 (D. Kan. June 23, 2016). BCBSKS presents no specific or particular facts demonstrating it would be harmed by production of the OneBeacon Settlement Agreement to Allied World. S*ee Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.,* No. 12-CV-03012-WJM, 2016 WL 11785647, at *2 (D. Colo. June 2, 2016) (compelling production of settlement agreement where movant presented "no unique issue indicating" the agreement "would reflect litigation strategy to [movant's] prejudice"). BCBSKS has not, for example, demonstrated the potential of a competitive business injury. *See, e.g.,* FED. R CIV. P.

26(c)(1)(G) (recognizing possible injury from revealing trade secrets or other confidential commercial information).

BCBSKS broadly asserts that production would give Allied World an "unfair advantage in future settlement negotiations." (ECF 252, at 6.) However, "courts have rejected the idea that revealing the terms of settlements with one co-defendant might impede settlement with other parties." *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB, 2007 WL 1246216, at *4 (D. Kan. Apr. 27, 2007) (collecting cases). Indeed, courts quite frequently order the production of settlement agreements reached with one party to remaining parties where the agreements are found relevant to issues remaining in the case. *See, e.g., Mendoza v. Old Republic Ins. Co.*, No. 16-17743, 2017 WL 636069, at *6 (E.D. La. Feb. 16, 2017); *Kissing Camels*, 2016 WL 11785647, at *2; *Tanner v. Johnston*, No. 2:11-CV-00028-TS-DBP, 2013 WL 121158, at *7 (D. Utah Jan. 8, 2013); *Thorough Unit Ent., Inc. v. UMG Recordings, Inc.*, No. 4:06-CV-118-BR, 2008 WL 11429658, at *1-2 (E.D.N.C. Mar. 21, 2008).

Because BCBSKS has not demonstrated a specific potential prejudice, supported by particular facts, it has not demonstrated good cause for the entry of a protective order. Accordingly, BCBSKS's motion for protective order is denied.

**IT IS THEREFORE ORDERED** that Allied World's Motion to Compel (ECF 250) is granted and BCBSKS's Cross-Motion for Protective Order (ECF 254) is denied, as set forth above.

Dated October 13, 2022, at Kansas City, Kansas.

s/ Angel D. Mitchell  
Angel D. Mitchell  
U.S. Magistrate Judge